OPINION OF THE COURT
Douglas E. Hoffman, J.
This matter comes before the court upon petitioner’s motion *901 and respondent’s cross motion for summary judgment. The court consolidates the motions for disposition.
Petitioner commenced these proceedings* to recover possession of various apartments located at 530 West 25th Street, New York, New York (the building). Petitioner alleges that respondents are unregulated tenants whose terms of occupancy have expired. The building is a loft and is located in an area zoned M15, commercial use for light manufacturing. The certificate of occupancy allows occupancy by approximately 75 people with office and storage use permitted. All respondents signed commercial leases which provided in pertinent part that the tenants “shall use and occupy demised premises for office and storage” or “commercial music/art studio”. The term of occupancy set forth in each lease has expired.
The parties agreed that the building was built well before . 1974 (specifically, 1890). Petitioner commenced these proceedings in the residential housing part, but asserted that the leases permit commercial use only and have expired. Petitioner contends that because the building is a loft, respondents were under an affirmative obligation to file an application for a determination of coverage under article 7-C of the Multiple Dwelling Law (Loft Law) with the Loft Board. If the Board found the building to be qualified for coverage, the parties would then begin the process of legalizing the property or converting it from commercial to residential status. A residential certificate of occupancy could then be issued. Once the building was brought into compliance with the provisions of the Loft Law, the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4 [RSL]) and Rent Stabilization Code (9 NYCRR parts 2520-2530) would govern the property. (29 RCNY 2-01 [m].) The Loft Board, however, no longer entertains applications for interim multiple dwelling status. Respondents’ last day to file an application for coverage was June 4, 1994. (29 RCNY 1-06.1 [a].) Consequently, according to petitioner, respondents are not only ineligible for rent stabilization protection at present, but are foreclosed from acquiring such protection any time in the future.
*902 Not surprisingly, respondents disagree. Respondents set forth in painstaking detail the manner in which they and a variety of other tenants came to live in the building from 1981 through the present. In 1980, petitioner’s predecessor in interest signed a 10-year net lease for the nearly empty building. With the acquiescence of the owner at that time, the net lessees assembled a group of tenants, including two of the three respondents in this proceeding, to lease the floors of the building for mixed residential and commercial use. Although the net lessees gave the tenants nominally commercial leases, all understood that the tenants would reside in the lofts. The net lessees, who were architects, not only knew that the tenants were using the lofts for residential purposes, they helped the tenants design their living space. At least six tenants, including these respondents, have occupied units in the building, residentially, since 1981. The tenants who were occupying the building at that time pooled their resources and paid for renovations which included complete working bathrooms with tubs and complete working kitchens. The tenants also renovated and converted the building’s elevator from a freight to a passenger elevator. Respondents submitted in support of their cross motion affidavits from the original net lessees verifying their allegations.
Respondents aver further that petitioner’s officer, who is the agent for the building, worked for the net lessees in 1983 and continued to work in the building through the present. Respondents assert that petitioner’s officer has had full personal knowledge at all times of the residential nature of respondents’ occupancy of the building. In their affidavits, respondents literally dared petitioner to submit an affidavit denying respondents’ factual assertions.
Both in support of its motion and in opposition to respondents’ cross motion for summary judgment, petitioner did not controvert respondents’ material factual assertions; rather, petitioner relied upon the lease provision stipulating commercial use of the lofts and the expiration of those leases. Facts not denied on a motion for summary judgment are deemed admitted. (Kuehne & Nagel v Baiden, 36 NY2d 539 [1975].)
Respondents contend that the Loft Law has no bearing upon this case. They assert that regardless of the nominally commercial-use clause contained in their leases, the building has contained at least six residential units since 1981 and was built prior to 1974, thereby qualifying respondents for protection under the Rent Stabilization Law and Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]).
*903 Petitioner cannot prevail in this proceeding. Despite the building’s lack of interim multiple dwelling (IMD) status, respondents are protected by the Rent Stabilization Law and Rent Stabilization Code, as well as by the ETPA. First, IMD status for the building is not precluded. Although application to the Loft Board seeking IMD status for the building may not be timely, the courts have concurrent jurisdiction with the Loft Board to determine IMD status. (County Dollar Corp. v Douglas, 160 AD2d 537, 538, as amended 161 AD2d 370, 371 [1st Dept 1990].) The Legislature has not imposed a Statute of Limitations for such determinations. (180 Varick St. Corp. v Center for Entrepenurial Mgt., NYLJ, Sept. 16, 1998, at 22, col 3 [Civ Ct, NY County]; 2 Finkelstein and Ferrara, Landlord And Tenant Practice in New York § 18:36, at 18-14 — 18-15 [1997].)
Second, regardless of whether or not respondents are precluded from obtaining IMD status for the building, they are rent-stabilized tenants who may be evicted only in accordance with the rent stabilization laws. The ETPA and the RSL are inclusive statutes. (Matter of Salvati v Eimicke, 72 NY2d 784, 790 [1988].) The ETPA sweeps within its ambit “all housing accommodations which it does not expressly except”. (Supra, at 791.) None of the statutory exemptions from the ETPA applies to the instant case. (See, McKinney’s Uncons Laws of NY §§ 8623, 8625 [ETPA §§ 3, 5].) The conduct and knowledge of petitioner’s predecessors in interest bind petitioner. (52 Riverside Realty Co. v Ebenhart, 119 AD2d 452, 453 [1st Dept 1986].) Moreover, petitioner’s current agent is the same person who has been extensively involved in the operation of the building since 1983.
The ETPA applies to residential, not commercial, units. (McKinney’s Uncons Laws of NY § 8625 [ETPA § 5].) A landlord, however, may not rent premises under a nominally commercial lease with knowledge that the tenants intend to convert the property to residential use, acquiesce in the conversion for 17 years, and seek to avoid protections afforded those tenants under the RSL and ETPA. (Metzendorf v 130 W. 57 Co., 132 AD2d 262, 265 [1st Dept 1987], citing Mandel v Pitkowsky, 102 Misc 2d 478, affd 76 AD2d 807.)
The ETPA also exempts from coverage housing accommodations in buildings substantially rehabilitated as family units on or after January 1, 1974. (McKinney’s Uncons Laws of NY § 8625 [a] [5] [ETPA § 5 (a) (5)].) Although the subject building was substantially rehabilitated as residential units in the *904 1980’s, this exemption is unavailing to petitioner. As the Appellate Division stated in analogous circumstances, this statutory exemption from rent-stabilization coverage was created “to give a landlord the investment incentive of the recoupment of his rehabilitation costs free of a stabilized rent. It would be a ridiculous perversion of the statute to hold that when the costs are substantially borne by the tenants it would qualify the landlord for unregulated rent and leave the tenants defenseless against increased exactions.” (Wilson v One Ten Duane St. Realty Co., 123 AD2d 198, 201 [1st Dept 1987].) There is no dispute but that the tenants, not the landlord, paid for the renovations converting the building to residential use. This exemption from ETPA coverage is therefore of no assistance to petitioner.
Based upon the rent-stabilized status of the subject apartments, petitioner’s motion for summary judgment is denied. Respondents’ cross motion for summary judgment is granted and the petition is dismissed. Petitioner’s ancillary application for use and occupancy is also denied. The dismissal of a holdover petition resulting in judgment in the tenant’s favor precludes a landlord’s recovery for rent or use and occupancy in the same proceeding. (Community League of W. 159th St. v Cesar, NYLJ, Apr. 21, 1989, at 21, col 6 [App Term, 1st Dept].) To the extent that any claim for rent arrears or use and occupancy remains viable, the landlord’s remedy is to pursue those claims in a separate action or proceeding.

 Two of the proceedings, Tan Holding Corp. v Wallace (index No. L&T 075776/98) and Tan Holding Corp. v Eklund (index No. L&T 075777/98), were consolidated by a prior order of this court dated June 3, 1998. The third, Tan Holding Corp. v Dzurinko (index No. L&T 084716/98), was consolidated with the other two by stipulation dated July 21, 1998. As an addendum to the June 21, 1998 order of this court all three proceedings are now consolidated under index No. L&T 075776/98.