OPINION OF THE COURT
Douglas E. Hoffman, J.
Respondents move for an award of attorney’s fees and for summary judgment as to their rent overcharge and excess se *424 curity deposit counterclaims. Petitioner cross-moves for renewal pursuant to CPLR 2221 as to the court’s decision/order of November 13, 1998 (Tan Holding Corp. v Wallace, 178 Misc 2d 900) granting summary judgment in favor of respondents and dismissing the petition. As a basis for renewal, petitioner asserts the existence of evidence known and available at the time of the original motion, but not proffered for reasons petitioner does not make clear.
BACKGROUND
Three residential tenants, respondents herein, commenced an action in Supreme Court, New York County, seeking judgment declaring that their tenancies were subject to rent stabilization protection. The tenants also sought damages for rent overcharge and refund of excess security deposits. Their landlord, petitioner herein, promptly commenced the instant holdover proceedings in Housing Court against each of the tenants, alleging that the three tenancies were commercial and that respondents were holding over in possession following termination of these commercial tenancies. The parties stipulated to discontinue the Supreme Court action and reserved all rights, including petitioner’s contention that the premises were, in fact, commercial. The court granted respondents’ motions to consolidate the three holdover proceedings. By decision/order dated November 13, 1998, the court denied petitioner’s motion for summary judgment and granted respondents’ cross motion for summary judgment holding that these loft apartments are subject to rent stabilization protection. Final settlement discussions were not fruitful, and the parties filed the instant motion and cross motion.
petitioner’s cross motion for renewal
The Appellate Division, First Department, has established the standard for a motion for renewal pursuant to CPLR 2221: “An application for leave to renew must be based upon additional material facts which existed at the time the prior motion was made, but were not then known to the party seeking leave to renew, and, therefore, not made known to the court. Renewal should be denied where the party fails to offer a valid excuse for not submitting the additional facts upon the original application * * * Nor should the remedy be available where a party has proceeded on one legal theory * * * and thereafter sought to move again on a different legal argument merely because he was unsuccessful upon the original application.” *425 (Foley v Roche, 68 AD2d 558, 568 [1st Dept 1979] [citations omitted].)
When petitioner filed its initial motion for summary judgment, it framed the litigation as follows: “The sole issue before the court is whether respondents, as commercial tenants, without any rights to renewal leases, should obtain relief which was once available, but is no longer available.” (Glassman affidavit, July 7,1998, 8.) Petitioner was referring to respondent’s failure to seek protection by applying for interim multiple dwelling (IMD) status under Multiple Dwelling Law article 7-C (Loft Law).
In support of their cross motion for summary judgment, the tenants contended that they paid for renovations to the subject building, converting the space to residential use with full knowledge of and participation by the predecessor landlord. Petitioner did not dispute this assertion and the court deemed it admitted.
Petitioner was fully aware at all times of respondents’ arguments that they should be accorded protection as rent-stabilized tenants pursuant to the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]) based upon the building having more than six residential units, having been constructed prior to 1974, and not being subject to any of the exemptions from coverage under ETPA, notwithstanding the fact that the subject building was never registered as an IMD. This was precisely an issue petitioner needed to address in opposing respondents’ cross motion for summary judgment.
In support of its motion for an order granting renewal, petitioner apparently has reversed course, abandoning its legal and factual contentions that the subject lofts have always been used exclusively for commercial purposes and instead conceding conversion to residential use. Petitioner now seeks for the first time to introduce evidence that it and its predecessor in interest, and not the tenants, bore or ultimately will bear the costs of substantial renovations to the loft space and common areas, thereby rendering them exempt from coverage under the ETPA.
Petitioner now alleges that all of the original tenants of the fourth, fifth and sixth floors, except respondent Dzurinko, contributed between $6,000 and $7,500 each for the cost of renovations. However, pursuant to lease agreements, the prior net lessees, Brambilla and Longo (B&L), agreed to reimburse these tenants or their successors for the money that they expended on fixtures and other improvements. These payments *426 were to be made as each tenant vacated. Petitioner also offers an undated purported purchase agreement between Harry Joe Brown, Jr. (HJB, Jr.) and B&L. Petitioner further alleges that HJB, Jr. purchased, for $150,000, all of the improvements made by the net lessee. In addition, this agreement required that HBJ, Jr. repay tenants $60,000 for fixture fees in 1990. Petitioner alleges that HJB, Jr. later transferred all rights and liabilities under this agreement to Tan Holding Corp., although it offers no documentary evidence of this. Respondents vigorously dispute petitioner’s factual contentions and petitioner’s right to raise them for the first time many months after the petition was dismissed.
This purported new evidence appears to have been readily available on the prior motion. Petitioner offers no explanation for the late tender of this evidence. While a court has broad discretion in granting renewal, even when the existence of the new evidence was known (4 Weinstein-Korn-Miller, NY Civ Prac if 2221.03), employment of this remedy, at a minimum, requires an explanation of why available purported evidence was not produced at the time the court rendered its original decision. (Matter of Fahey v Whalen, 54 AD2d 1097 [4th Dept 1976].)
Petitioner’s cross motion must fail under the standard articulated in Foley v Roche {supra). Petitioner presents no excuse whatsoever for the belated proffer of new evidence, although that evidence was apparently readily available. This omission is glaring and inexplicable. Petitioner’s suggestion that it did not think it necessary to dispute respondents’ assertion on their cross motion for summary judgment that the tenants paid for the renovations is simply not an excuse.
In a motion for summary judgment, the court is required to. deem any facts not denied by petitioner as admitted. (Kuehne & Nagel v Baiden, 36 NY2d 539 [1975].) Where facts are in dispute, each side must lay bare its proofs in admissible form. Petitioner did not do this in its original motion, and did not do this in its motion to renew. Even on renewal, petitioner failed to submit all of its evidence, but waited until submitting its reply papers to submit the bulk of the new evidence. If the court cannot consider the newly proffered evidence in petitioner’s motion to renew, it follows, a fortiori, that the court cannot consider evidence newly submitted in a reply. The function of a reply is to address issues raised in the opposition, not to present new facts in support of its motion. (Lawrence v Esplanade Gardens, 213 AD2d 216 [1st Dept 1995].) To do otherwise *427 would be to condone a tactic which is questionable at best and which unnecessarily prolongs litigation and wastes judicial resources by requiring surreplies not ordinarily contemplated for motion practice under the CPLR. (See, Ritt v Lenox Hill Hosp., 182 AD2d 560 [1st Dept 1992].) While the rule in Ritt arose in the context of a summary judgment motion, it follows that such a rule would apply with equal force to renewal of such a motion.
Furthermore, on November 13, 1998, the court also held that the tenants herein are not precluded from seeking IMD status, notwithstanding the untimeliness of such an application before the Loft Board, since the courts have concurrent jurisdiction with the Loft Board to make this determination. (County Dollar Corp. v Douglas, 160 AD2d 537, 538, affd 161 AD2d 370, 371 [1st Dept 1990].) The Legislature has not imposed a Statute of Limitations for such determinations. (180 Varick St. Corp. v Center for Entrepenurial Mgt., NYLJ, Sept. 16, 1998, at 22, col 3 [Civ Ct, NY County]; 2 Finkelstein and Ferrara, Landlord and Tenant Practice in New York § 18:36, at 8-14— 8-15 [West 1998].) The court, therefore, granted summary judgment on two bases. Petitioner makes no mention of this in the instant cross motion. Even if petitioner were successful as to the issue of rent stabilization protection, the tenants would have prevailed in their summary judgment motion on the IMD issue. Accordingly, petitioner’s motion for renewal is denied.
respondents’ motion
Attorney’s fees
Respondents move pursuant to Real Property Law § 234 for an award of attorney’s fees. Real Property Law § 234 provides for attorney’s fees for a tenant who substantially prevails in defending an action commenced by the landlord based upon the failure of the tenant to perform any covenant or agreement in the lease when the lease would permit a landlord to recover such fees if successful in prosecuting the action. (BLF Realty Holding Corp. v Kasher, 181 Misc 2d 93 [Civ Ct, NY County 1999].) As a basis for invoking the reciprocity provisions of Real Property Law § 234, each of the three tenants herein cite paragraph 19 of their leases which obligates them to pay landlord’s attorney’s fees in actions based upon default in their lease obligations.
Respondents are entitled to attorney’s fees as prevailing parties in this holdover proceeding, as this proceeding was *428 clearly based upon an alleged default in an obligation under the lease. Had the tenants lost, the landlord would have received a judgment of possession and the right to obtain a warrant of eviction. Petitioner’s argument that respondents are not entitled to fees because the court’s November 13, 1998 decision/order in the instant summary proceeding is in the nature of a declaratory judgment is incorrect and, further, is belied by its own petition seeking legal fees as provided for by the very lease provisions cited by respondents in this motion.
Petitioner also argues that respondents’ motion for attorney’s fees is premature since the prevailing party cannot be established until all of the issues have been resolved in this case, including the pending renewal motion and respondents’ motion for summary judgment as to the counterclaims. The court has denied petitioner’s cross motion for renewal. Dismissal of the rent overcharge counterclaims would not in this case deprive respondents of their status as substantially prevailing parties, but may preclude an award of fees as to that aspect of the proceeding. Therefore, final determination of the counterclaims, discussed infra, shall not require postponement of the hearing as to the amount of reasonable and necessary fees expended to date. A notice of appeal has been filed as to the November 13, 1998 order. Since respondents have now prevailed in the instant renewal motion, and there is no indication that petitioner has sought to perfect the appeal from the above order, a stay of the hearing for attorney’s fees incurred in connection with the holdover proceedings would not be appropriate. (BLF Realty Holding Corp. v Kasher, supra.) Accordingly, the hearing is scheduled for October 14, 1999, 9:30 a.m. The parties are to appear in Part B. The matter will then be referred to Part X for the hearing.
Petitioner correctly contends, however, that the court should not award respondents attorney’s fees as to the Supreme Court action. First, the stipulation discontinuing and withdrawing that action was “without costs” to either side. Second, generally parties may not recover for attorney’s fees where there is no default in the performance of a lease obligation and they sought a declaratory judgment merely determining the rights of the parties under the lease or applicable statutory provisions. (Spinale v 10 W. 66th St. Corp., 193 AD2d 431 [1st Dept 1993]; Peck v Wolf, 157 AD2d 535 [1st Dept], appeal denied 75 NY2d 709 [1990]; Kips Bay Towers Assocs. v Yuceoglu, 134 AD2d 164 [1st Dept 1987].) A prevailing party in a declaratory judgment action may be entitled to an award of attorney’s fees, *429 however, depending upon the specific language of the lease clause providing for such awards. (BLF Realty Holding Corp. v Kasher, supra.) In the instant case, however, there is no lease provision permitting such an award under these circumstances.
Counterclaims as to Rent Overcharges
Respondents move for summary judgment as to their counterclaims for rent overcharge. They do not appear to dispute the initial rents that petitioner established, but rather argue that because no initial or annual rent registrations took place, as required for rent-stabilized apartments, the landlord cannot seek any increases above the first rents paid. Petitioner argues that, notwithstanding the lack of registration, any analysis of the legal rent must be limited to the four-year period prior to the May 1998 service of the notice of petition and petition.[1] (CPLR 213-a; Administrative Code of City of NY § 26-516 [a], [g]; McKinney’s Uncons Laws of NY § 8632 [a] [1] [ij [ETPA § 12 (a) (1) (i)].)
Respondents Eklund and Dzurinko seek overcharges based on rents charged as of January 1986, and respondent Wallace from April 1992. The tenants argue that the four-year review period in rent overcharge cases does not apply here because this is an affirmative defense not raised in a reply to the counterclaim, and also because the four-year period does not begin to run until the rents are registered.
Petitioner concedes that registration has never taken place because it held a good-faith belief that the lofts were rented as commercial space. This belief is also petitioner’s basis for asserting that overcharges, if any, were not willful. Therefore, petitioner argues, for respondents Wallace, Dzurinko, and Ek-lund the base date rents for computing an overcharge are $1,273.80 per month, $838 per month, and $864.59 per month respectively, the rents charged as of May 1994, plus lawful guideline increases and adjustments. Respondents also contend that the loft apartments have been subject to rent regulation from their inception. Petitioner counters that the apartments first became subject to rent regulation on November 13, 1998 when the court issued its order herein, and, therefore, the legal regulated rent is established by using the rental amount paid four years prior to the date the housing accommodation was first required to be registered. (9 NYCRR 2526.1 [a] [3] [ii].)
*430 The tenants contend that an owner may only lawfully collect the legal regulated rent which the landlord has registered. (See, 9 NYCRR 2525.1.) Where no registration has taken place, tenants argue further that the owner is limited to collecting what would have been the initial stabilized rent (see, George Washington Gramercy Park Hotel Assn. v Bain, NYLJ, June 11, 1986, at 11, col 5 [App Term, 1st Dept]), and the landlord can collect no increases. (Administrative Code § 26-517 [e].)[2] The first rent for respondent Dzurinko’s apartment is alleged to be $250 per month; for respondent Eklund $450 per month; for respondent Wallace $800 per month. Petitioner offers no information as to these rental amounts since it takes the position that only the rents in effect since May 1994 are in issue, and the landlord is not required to produce records of rental history prior thereto.
Respondents also seek interest at the rate of 9% per annum from the date of the overcharge on the nontrebled portion of the overcharge. (Administrative Code § 26-511 [c] [3]; 9 NYCRR 2526.1 [a] [1]; CPLR 5004.) They suggest, as a “reasonable intermediate date” for the computation of interest, the midpoint of each overcharge period. (CPLR 5001 [b].) Respondents also seek attorney’s fees on their overcharge counterclaim.
Petitioner’s lack of reply to respondents’ counterclaim does not preclude the assertion of a Statute of Limitations defense notwithstanding the absence of a motion to amend the pleadings. Such motions generally receive favorable treatment. (CPLR 3025.) CPLR 3025 (b) provides that a party may amend a pleading “at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.” Courts have the widest latitude in granting such motions (5 Weinstein- *431 Korn-Miller, NY Civ Prac 3025.11), even after judgment. (Murray v City of New York, 43 NY2d 400, 405 [1977].) If a proposed amendment does not add any new facts, but merely seeks to change the theory of the claim or defense, a court may also grant leave to amend. (Rife v Union Coll., 30 AD2d 504, 505 [3d Dept 1968].)
In addition, absent surprise or prejudice, a court should generally grant leave to amend. (Seda v New York City Hous. Auth., 181 AD2d 469, 470 [1st Dept], lv denied 80 NY2d 759 [1992].) However, when prejudice arises from such an amendment, a court must deny leave. (Xavier v Grunberg, 67 AD2d 632 [1st Dept 1979].) The party opposing amendment must show prejudice “traceable to the fact that the original pleading did not contain what the pleader seeks to add in the amended one. If, for example, P feared that D would interpose a certain defense and the original answer comes in without it, P is not yet home free. If nothing occurs on either side for a few months and D then moves to amend the answer to insert the very defense P feared, P will try to claim prejudice. And if the defense has merit P will indeed be prejudiced because it will likely defeat P’s case. But that is not the prejudice that bars the amendment. In the example put, the amendment should be granted because no prejudice is attributable to the mere omission to plead the defense in the original answer.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3025:6, at 356-357.) Similarly, in Seda (supra), the Court held that defendant should be permitted to amend its answer to include a defense of Statute of Limitations despite a three-year delay in raising this defense. The amendment in Seda resulted in dismissal of the complaint.
Even in the absence of a motion to amend, the omission of a reply to a counterclaim is not necessarily fatal to obtaining the relief sought: “The omission to include a counterclaim, or to label as a ‘counterclaim’ a defense that can also serve as one, may preclude affirmative relief from being awarded to the defendant. But if the plaintiff has the requisite notice of the defendant’s position, and all of the underlying issues of fact have been appropriately injected into the case, the court may of course permit an amendment to add the ‘counterclaim’ and the request for affirmative relief that appends to it. The court can grant any relief ‘appropriate to the proof whether or not demanded’, CPLR 3017 (a), as long as no party can claim prejudice. CPLR 3026.” (Siegel, Practice Commentaries, McKin- *432 nay’s Cons Laws of NY Book 7B, CPLR C3018:17, at 160.)[3] It follows that the court can deem a reply to a counterclaim interposed where the opposition to a motion for judgment on the counterclaim contains within it the content of a reply, though not labeled as such, and the court need not require an additional motion for leave to amend the pleadings especially where such leave would be freely given absent prejudice. The liberal pleading requirements set forth in CPLR 3025 (b) contemplate such a result. Accordingly, the court shall deem petitioner’s opposition to respondents’ motion for judgment on their counterclaims as a reply thereto.
On the merits, the court is of the opinion that these apartments became subject to rent stabilization at the time they came into existence, and not from the date of the court’s November 1998 order as petitioner argues. Rent regulatory status arises not from a decision or order of the court, but from the factual context in which a particular building exists. If the history and physical makeup of a particular multiple dwelling bring it within the ambit of those housing accommodations not expressly exempt, rent regulation attaches. (Matter of Salvati v Eimicke, 72 NY2d 784, 790 [1988]; see also, ETPA §§ 3, 5 [McKinney’s Uncons Laws of NY §§ 8623, 8625].) This court’s decision/order of November 13, 1998 merely determined that no issues existed as to the facts upon which rent regulation applies to the apartments herein. The decision/order is not a declaration of rights which exist thereafter. Petitioner’s belief that an alternate state of facts existed is one factor to consider in a determination as to willfulness of an overcharge.
The court must now determine whether or not material issues of fact exist as to rent overcharges. Administrative Code § 26-516 (g) states, “Any owner who has duly registered a housing accommodation pursuant to section 26-517 of this chapter shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation.” Neither side disputes the lack of the initial registration as well as any subsequent registration for the subject premises. On this basis, petitioner cannot invoke *433 the protection of the four-year period of review for overcharge claims, and respondents may be entitled to recover overcharges, if any, based upon review of rents from the inception of their tenancy. (319 W. LLC v Gold, NYLJ, Feb. 10, 1999, at 27, col 6 [Civ Ct, NY County]; see also, First Time Realty Co. v Payton, NYLJ, Sept. 15, 1999, at 31, col 3 [Civ Ct, Kings County].)
This case is distinguishable from Milan Assocs. v Bailey & Apeldorf (NYLJ, Aug. 27, 1998, at 21, col 2 [App Term, 1st Dept]) in which the landlord had failed to file an initial registration in 1988, and an annual registration in 1989, but had filed registrations for every year thereafter. The Appellate Term held: “Tenants are not entitled to a rent overcharge award because of the former landlord’s failure to file an initial rent registration in 1988. Pursuant to the Rent Regulation Reform Act of 1997 (L 1997, ch 116), which is applicable to pending proceedings (Theoharidou v. Newgarden, 176 Misc 2d 97), Rent Stabilization Law § 26-516 (a) now provides that where the amount of rent set forth in an annual rent registration statement is not challenged within four years of its filing with DHCR, ‘ * * * neither such rent nor service of any registration shall be subject to challenge at any time thereafter’ (emphasis added).The record establishes that landlord has filed annual rent registrations since 1988 (except for the year 1989); that the registered rent is greater than the preferential rent in tenants’ lease; and that there was no challenge to the amount of rent set forth in the registration statements or lease until interposition of tenants’ answer in this summary proceeding in May 1996.” (Milan Assocs. v Bailey & Apeldorf, at 21, cols 2-3.) In Milan (supra), the court based its holding on rent registrations which have actually been filed. Here there are no such registrations in place.
Where, as here, an owner creates housing accommodations in space that was previously nonresidential “the resultant housing accommodation was not in existence on the applicable base date. Such a finding may entitle the owner to charge a market ‘first rent,’ subject to guidelines limitations for future rent adjustments.” (NY State Div of Hous & Community Renewal Operational Bulletin No. 95-2, part V [Dec. 15, 1995]; see also, 1 Finkelstein and Ferrara, Landlord and Tenant Practice in New York § 11:294 [West 1998].) Such a first rent can be charged as a “free market rent.” (Matter of 300 W. 49th St. Assocs. v New York State Div. of Hous. & Community Renewal, 212 AD2d 250 [1st Dept 1995].) These rents, however, are not subject to fair market rent appeals. (Administrative *434 Code § 26-513 [b]; Matter of Stuyvesant Town Assoc., DHCR admin review docket No. EA 410283 RO, Feb. 28, 1992; Matter of Winter, DHCR admin review docket No. DH 210437 RO, Feb. 4, 1993.) The loft apartments herein have never been subject to rent control because the space had been commercial or industrial prior to its conversion to residential use in the early 1980’s. If the increases subsequent to the first fair market rents are lawful but for the failure timely to register, no overcharges will be found (Administrative Code § 26-517 [e]), and no award of treble damages will be based solely on landlord’s failure to file an initial or annual registration. (Administrative Code § 26-516 [a].)
The 1993 amendments to Administrative Code § 26-517 (e) and the 1997 amendments to ETPA compel this result based on the facts of this case. Since the landlord has filed no initial registration or any subsequent registration, prior to the tenant’s overcharge claim, the landlord’s late registration will also be subject to the late filing surcharge penalty as provided by Administrative Code § 26-517 (e). In any event, the landlord must serve the tenants with DHCR form RR-1 pursuant to 9 NYCRR 2523.1 and 2528.2 (d), as well as any subsequent annual registrations filed pursuant to 9 NYCRR 2528.3 (b). The landlord is precluded from applying for or obtaining any further rent increases until registrations are completed. (9 NYCRR 2528.4; McKinney’s Uncons Laws of NY § 8632-a [e] [ETPA § 12-a (e)].)
Accordingly, that branch of tenants’ motion seeking summary judgment as to their counterclaims for rent overcharges is marked off-calendar until rent registration is completed or 60 days elapse. Following registration, respondents may restore the matter to the court’s calendar. If registration has not been completed within 60 days from the date of this decision/order, respondents may also move to restore. In the interim, the rents herein are frozen at the amount of the first rents established at the time that the apartments became subject to rent stabilization.
Counterclaim for Excess Security as to Respondent Wallace
Respondent Wallace counterclaims for return of excess security deposit and statutory interest of 9% per annum on the excess security. Mr. Wallace also seeks, under the terms of his lease, interest of 5% per annum payable annually on the anniversary date of the lease, which landlord allegedly failed to pay after the first year of the tenancy, in addition to statutory *435 interest of 9% per annum on the amount of interest for which landlord defaulted under the terms of the lease. Mr. Wallace took occupancy of the subject apartment pursuant to a written lease which commenced on April 1, 1992 at a rental amount of $1,220 per month. He paid security of $4,500. He alleges, as do the other respondents herein, that the rent should revert back to the first rent paid when the apartments were converted to residential use. In his case this amount is alleged to be $850 paid by a prior tenant, and the security, therefore, should not exceed this amount. Mr. Wallace proposes calculations of excess security, as well as interest, based on this amount. Petitioner does not dispute the allegations of Mr. Wallace regarding the security deposit, and the court deems these allegations admitted. (Kuehne & Nagel v Balden, 36 NY2d 539, supra.)
Under rent stabilization, the landlord is precluded from holding security in excess of one month’s rent, unless an amount in excess of one month was paid prior to the enactment of the Rent Stabilization Law and the apartment has been occupied by the same tenant since that time. (9 NYCRR 2525.4.) A landlord must deposit security in an interest-bearing account. (9 NYCRR 2525.4 [a].) At the tenant’s option, interest may be applied to rent, paid to the tenant annually, or held in trust until repaid. (9 NYCRR 2525.4 [c].) The landlord may retain a fee of 1% per annum of the amount of the deposit as an administrative expense. (9 NYCRR 2525.4 [b].) Accordingly, the court orders petitioner to return security in excess of $850, with statutory interest on the excess. Petitioner shall also pay 5% interest on one month’s security pursuant to the lease from April 1, 1994 through the most recent lease anniversary date. Landlord may deduct administrative expenses from this amount. In addition, statutory interest is also awarded as to the interest due under the terms of the lease. Respondent Wallace to settle judgment on notice.

. Where a counterclaim is contained in an answer, it is deemed interposed, for Statute of Limitations purposes, at the time that the claims asserted in the notice of petition and petition were asserted. (CPLR 203 [d].)

. Administrative Code § 26-517 (e) states that the “failure to file a proper and timely initial or annual rent registration statement shall, until such time as such registration is filed, bar an owner from applying for or collecting any rent in excess of the legal regulated rent in effect on the date of the last preceding registration statement or if no such statements have been filed, the legal regulated rent in effect on the date that the housing accommodation became subject to the registration requirements of this section. The filing of a late registration shall result in the prospective elimination of such sanctions and provided that increases in the legal regulated rent were lawful except for the failure to file a timely registration, the owner, upon the service and filing of a late registration, shall not be found to have collected an overcharge at any time prior to the filing of the late registration. If such late registration is filed subsequent to the filing of an overcharge complaint, the owner shall be assessed a late filing surcharge for each late registration in an amount equal to fifty percent of the timely rent registration fee.”

. Failure to reply to a counterclaim does not warrant a default judgment where such an omission results from mistaken legal judgment and was not willful. (Bradley v Rogers, 125 AD2d 782 [3d Dept 1986].) Here, the respondents served the counterclaim upon prior counsel for petitioner, and the court would likely have granted leave to answer if petitioner had sought such leave.