Cardona, P. J., Crew III, Carpinello and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.

■ In the Matter of the Estate of ELIZABETH V. MENDLESON, Deceased. KEY TRUST NATIONAL ASSOCIATION, as Successor Trustee for the Benefit of BETTY BLATNER, Respondent; MARY B. VALENTIS et al., Appellants. [706 NYS2d 228] —Mercure, J. Ap-

peal from an order of the Surrogate's Court of Albany County (Marinelli, S.), entered January 26, 1999, which granted petitioner's motion for partial summary judgment.

The will of Elizabeth V. Mendleson, which was admitted to probate in Albany County in November 1944, established a trust (among others) for the benefit of Mendleson's daughter, Betty Blatner. Under the terms of the will, the trustee was to distribute income to Blatner during her lifetime, then distribute income to her husband if he survived her and for so long as he remained unmarried, and thereafter terminate the trust and distribute the proceeds to Blatner's issue. National Commercial Bank and Trust Company was appointed trustee of the trust. After approximately 18 years of trust administration, the trustee filed an intermediate account, and a July 1965 order of Surrogate's Court judicially settled the account, established the principal of the trust at $134,894.70 and, upon payment of a surcharge and interest thereon, discharged the trustee with regard to all matters from the inception of the trust to June 30, 1965. Petitioner's predecessor in interest was appointed successor trustee in July 1979. Betty Blatner died on March 24, 1995; her husband predeceased her.

In May 1997, petitioner filed a final account of its proceedings as trustee from and after June 30, 1965. Respondents, who are Blatner's issue and the remaindermen of the trust, filed objections claiming that petitioner failed to invest in accordance with the prudent person rule of EPTL 11-2.2 (former [a] [1])* and caused the value of their trust to substantially diminish and suffer a net principal loss of $33,988.50 over a 30-year period. Because the entire trust corpus had at all relevant times been placed in common trust funds pursuant to Banking Law § 100-c (1), periodic accounts of the common trust funds' proceedings had been filed pursuant to Banking Law § 100-c (6) and decrees had been entered approving those accounts through April 30, 1991, petitioner first moved to limit discovery and then sought partial summary judgment dismissing the objections as to all matters that had been raised in the periodic accounts up to that date. Surrogate's Court granted the motion and respondents appeal.

We affirm. Because "[m]ounting overheads have made administration of small trusts undesirable to corporate trustees * * * [and] [i]n order that donors and testators of moder-

---

\* Current law, the Uniform Prudent Investor Act, applies to investments "made or held" by a trustee on or after January 1, 1995 (EPTL 11-2.3 [a]). Because the investments at issue in this appeal were made prior to January 1, 1995, the former prudent person rule of EPTL 11-2.2 (a) (1) controls here.

ately sized trusts may not be denied the service of corporate fiduciaries," New York and a number of other States "have permitted pooling small trust estates into one fund for investment administration" (*Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 307-308; *see*, Banking Law § 100-c). "The income, capital gains, losses and expenses of the collective trust are shared by the constituent trusts in proportion to their contribution. By this plan, diversification of risk and economy of management can be extended to those whose capital standing alone would not obtain such advantage" (*Mullane v Central Hanover Bank & Trust Co., supra*, at 308; *see*, *Matter of OnBank & Trust Co.*, 90 NY2d 725, 728).

As alluded to earlier, Banking Law § 100-c (6) requires each trust company maintaining a common trust fund to file periodic (presently, at least once every 10 years) "account[s] of its proceedings in respect thereof." Notice is required to be given by publication and also by mail to those presently entitled to share in the income (Banking Law § 100-c [6] [b] [i]) or principal (Banking Law § 100-c [6] [b] [ii]) or those with a contingent or remainder interest in the trust (Banking Law § 100-c [6] [b] [iii]). In addition, the court is required to appoint separate guardians ad litem for those having an interest in the income and those having an interest in the principal of the common trust. Of primary significance here, Banking Law § 100-c (6) also provides that: "[t]he decree in such proceeding shall be thereafter binding and conclusive in respect of any matter embraced in the account or in such decree upon all persons having or who may thereafter have any interest in such common trust fund or in any participating * * * trust."

It is undisputed that in this case, petitioner filed accountings with regard to the common trust funds at issue here for the periods ending April 30, 1967, April 30, 1971, April 30, 1975, April 30, 1981 and April 30, 1991 and that each such account was settled by a judicial decree. Further, although only the last set of accountings (filed with regard to the Equity Common Trust Fund and the Fixed Common Trust Fund of Key Trust Company for the period May 1, 1981 through April 30, 1991) are included in the record, there appears to be no question that each of the accountings addressed the issue of whether the investments of the respective common trust funds were in "such securities as would be acquired by prudent [persons] of discretion and intelligence in such matters who are seeking a reasonable income and the preservation of their capital" (EPTL 11-2.2 [former (a) (1)]) and that the judicial decrees explicitly or impliedly found that the prudent person standard had been satisfied.

In fact, in their opposition to petitioner's motion and now on appeal, respondents make no contention to the contrary. Rather, they attempt to circumvent the preclusive effect of Banking Law § 100-c (6) by adopting the stance that their objections are not addressed to the individual investments of the subject common trust funds but, instead, that their challenge is to the investment in these common trust funds themselves. Put another way, respondents argue that the exclusive and continued use of the common trust funds as an investment vehicle was imprudent. In our view, the distinction is an illusory one, obviously crafted for the purpose of giving respondents a second opportunity to challenge the management of the common trust funds. Respondents' complaint with the common trust funds is that they lost money, which directly implicates the propriety of the investments selected by the funds, an issue that was squarely faced in the various accounts filed and approved for all periods through April 30, 1991. In our view, the conclusion is inescapable that, under the express terms of Banking Law § 100-c (6), the several decrees settling the periodic accountings filed with regard to the common trust funds at issue here were binding and conclusive upon respondents and bar their present objections to the extent found by Surrogate's Court.

As a final matter, we find the remaining arguments addressing the doctrine of res judicata to be rendered academic.

Cardona, P. J., Peters, Graffeo and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.