In the Matter of the Trust Made by HELEN M. STRONG, Deceased. KEY TRUST COMPANY, N. A., as Trustee of the Trust Made by HELEN M. STRONG, Deceased, Appellant; CHARLES E. PANNACI, Respondent. [734 NYS2d 668] —Carpinello, J. Appeal from an order and decree of the Surrogate's Court of Fulton County (Lomanto, S.), entered June 6, 2000 and February 1, 2001, which, *inter alia*, in a proceeding pursuant to SCPA article 22, denied petitioner's cross motion for summary judgment dismissing respondent's objections to the accounting of a trust made by Helen M. Strong.

By will dated November 2, 1964, Helen M. Strong established a testamentary trust to manage a portion of her residuary estate upon her demise. The principal purpose of the trust was to provide suitable life income to Strong's daughter, with the remainder to be paid outright to her daughter's issue upon her death. The designated trustee was National Commercial Bank and Trust Company, petitioner's predecessor. After Strong's

death, the trust was funded in 1966 with a block of National Commercial Bank stock, as well as shares of stock in 18 other corporations, all with an aggregate value of $107,129.72. All of the stock, except for the National Commercial Bank stock, was immediately liquidated and the proceeds invested in National Commercial Bank's common trust funds.[1] The National Commercial Bank stock was sold in 1984 and invested in these common trust funds.

For the next 32 years until the death of Strong's daughter in 1998, petitioner managed the trust and regularly paid income (as well as some principal) to Strong's daughter, totaling $211,758.43. Notwithstanding this sizable distribution, a balance of nearly $205,000 remained for distribution to the daughter's sole issue, respondent. Despite the nearly four-fold increase in trust assets over a 30-year period, respondent filed objections to petitioner's 1999 final trust accounting. His objections, distilled to their essence, fall into three general categories.

First, respondent contends that by investing in its common trust funds, petitioner breached its fiduciary duty by achieving investment returns less than those which a "prudent investor" would have achieved. Moreover, he contends that by liquidating the National Commercial Bank stock in 1984, petitioner violated the stated wishes of Strong, whose will permitted petitioner to retain said stock as a trust investment regardless of whether it was "authorized by law or by any rule of court." Finally, he alleges that a shift in investment philosophy from income/growth to growth/income was not adequately communicated to the trust beneficiaries and hence a breach of its fiduciary duty. Petitioner appeals from the denial of its cross motion for summary judgment seeking dismissal of respondent's objections. We find that the cross motion should have been partially granted and, accordingly, modify the order and decree.

Respondent's objections regarding the sale of the National Commercial Bank stock and the shift in investment philosophy are easily disposed. Since a fiduciary's maintenance of an undue concentration of a particular stock in an investment portfolio has been found to constitute a violation of the "prudent person rule" (*see*, EPTL 11-2.2 [a] [1]; *Matter of Janes*,

---

1. Common trust funds permit the pooling of small trust estates into one fund for investment administration thereby extending diversification of risk and economy of management to those trusts whose size ordinarily would not permit such advantages (*see, Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 307-308; Banking Law § 100-c).

90 NY2d 41, 50-51; *Matter of Rowe*, 274 AD2d 87, 91, *lv denied* 96 NY2d 707; *Matter of Saxton*, 274 AD2d 110, 118),[2] petitioner can hardly be faulted for selling the National Commercial Bank stock and thereby insuring proper portfolio diversification. The sale was also appropriate in that it permitted petitioner to invest in higher yielding bonds consistent with Strong's express purpose of the trust, namely, providing adequate lifetime income to her daughter (*see, Matter of Janes, supra*, at 50; *Matter of Rowe, supra*, at 91).[3] Neither the trust language permitting retention of the stock nor the preferences of the trust beneficiaries would have insulated petitioner from a claim that it breached its fiduciary duty had it failed to achieve appropriate diversification. As to the claimed inappropriate shift in investment philosophy, we note that the only person who could have suffered from such a shift, Strong's daughter as the income beneficiary, repeatedly approved of same in writing. Accordingly, any objections regarding the sale of the National Commercial Bank stock or the shift in investment philosophy should have been dismissed.

Resolution of respondent's objections to petitioner's investment in its own common trust funds is more problematic. In seeking summary judgment, petitioner relied on five judicial decrees between 1970 and 1993 approving interim common trust accountings for time periods between June 1966 and April 1991. Citing to our decision in *Matter of Mendleson* (271 AD2d 866), petitioner argued that respondent was precluded from relitigating whether petitioner violated the "prudent person rule" because these accountings had been judicially settled. Indeed, in *Mendleson*, we held that the "several decrees settling the periodic accountings filed with regard to the [trustee's] common trust funds * * * were binding and conclusive upon [the objectants]" (*id.*, at 869) thereby barring any objections concerning whether the trustee's "exclusive and continued use of [its own] common trust funds as an investment vehicle was imprudent" (*id.*, at 869).

Notwithstanding our decision in *Mendleson*, Surrogate's Court nonetheless found an issue of fact as to whether respondent had received notice of these common trust fund account-

---

2. EPTL 11-2.2 (a) (1) defines the scope of authorized investments for a fiduciary prior to January 1, 1995.

3. It is noteworthy that in 1985, after a dispute arose over the sale of the National Commercial Bank stock, the *same law firm* which currently represents respondent in this proceeding wrote to petitioner on behalf of its "clients" (i.e., Strong's daughter and respondent) advising that "we have reached the conclusion that no legal action against [petitioner] is appropriate."

ings, as required by Banking Law § 100-c (6). Consequently, the matter was set down for a hearing. Testimony at that hearing established that respondent and his mother lived together from, at least, 1977. In that year, they moved from the City of Gloversville, Fulton County, to the Town of Richfield Springs, Otsego County. Affidavits of service attached to petitioner's motion papers indicated that after 1977, the notices of the common trust fund accountings were mailed to his mother at the Richfield Springs address, but that the notices to respondent were mailed to the Gloversville address, that being the last address it had on file for him.[4] Significantly, petitioner had no evidence that these mailings were ever returned as undeliverable. Although respondent testified that he regularly assisted his mother with her mail, specifically including trust correspondence from petitioner, he denied ever receiving any accountings, whether addressed to his mother or to him.

In denying petitioner's cross motion for summary judgment, Surrogate's Court found that petitioner had failed to provide any affidavits of service for certain of the common trust fund accountings and that some of the photocopied affidavits of service which had been provided were not "court-certified" and therefore inadmissible. Although moot, Surrogate's Court also noted that petitioner had a duty to take "some affirmative action" to insure that its list of addresses of interested persons was accurate and that since petitioner had made no such effort, summary judgment in its favor would nevertheless be inappropriate.

With respect to the affidavits of service, we note that the copies of same in the record which were either appended to petitioner's motion papers or tendered by petitioner at the hearing do in fact establish that notice was mailed to respondent for the accountings which were approved by the decrees of 1975, 1981 and 1993 (no affidavits of service were provided for the 1970 and 1985 decrees). The rejection by Surrogate's Court of the photocopies was improvident since counsel for petitioner could have simply certified them as true copies of the originals had the court indicated that it had any concerns about their authenticity (see, CPLR 2105). Accordingly, we reject the court's finding that there was a failure of proof with respect to the service of notice of the accountings for the decrees entered in 1975, 1981 and 1993.

We also reject the finding of Surrogate's Court that petitioner had an affirmative duty to insure the accuracy of respondent's

---

4. Respondent acknowledges that he never advised petitioner of his change of address.

addresses in its records. This finding ignores the Legislature's intentional deletion of a less onerous requirement from Banking Law § 100-c (*see*, L 1986, ch 239). Specifically, in order to reduce the expenses incurred in the administration of common trust funds (expenses which unnecessarily depleted trust assets), the Legislature in 1986 implemented a number of changes, including the deletion of the requirement that common fund trustees aver on accountings that they had "used diligence" in maintaining their lists of names and addresses of trust fund beneficiaries (*see*, Banking Law former § 100-c [12] [2]). Since a court cannot substitute its judgment for that of the Legislature (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 73), Surrogate's Court erred in imposing a duty of affirmative action on petitioner.

To the extent not discussed, petitioner's remaining contentions have been reviewed and rejected.

Mercure, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the order and decree are modified, on the law, with costs to petitioner, by reversing so much thereof as denied petitioner's cross motion for summary judgment; cross motion partially granted by dismissing all objections except those pertaining to allegations concerning the time periods covered by the 1970 and 1985 judicial decrees and those that pertain to the time period subsequent to April 30, 1991, the end date for the 1993 accounting; and, as so modified, affirmed.