OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Does Banking Law § 100-c (3) require that a common trust fund trustee who has lawfully invested in mutual funds itself absorb the mutual fund management fees, or can those fees be paid out of the trust fund? We conclude that such fees are properly payable by the common trust fund.
 

 A common trust fund is essentially a collection of smaller trust funds pooled for joint administration and management. First authorized by the Legislature in 1937, such funds are regulated by Banking Law § 100-c. Before 1937, trustees were sometimes reluctant to administer smaller trusts because they required the same attention and effort as larger trusts but could not support commensurate fees. Pooled trust funds solved the problem by offering the individual trusts, more diversification, better management and lower fees while at the same time reducing administrative costs and thereby improving profitability
 
 (see generally,
 
 Note,
 
 The Common Trust Fund Statutes
 
 — A
 
 Legalization of Commingling,
 
 37 Colum L Rev 1384 [1937];
 
 see also, Matter of Bank of N. Y.,
 
 189 Misc 459).
 

 While allowing common trust funds, the Legislature imposed restrictions on their management. In statutory language that has remained unchanged for six decades, the Legislature provided, for example, that a "common trust fund shall not be deemed a separate trust fund on which commissions or other compensation is allowable and no trust company maintaining such a fund shall make any charge against such fund for the management thereof’ (Banking Law § 100-c [3]).
 

 Appellant OnBank & Trust Company, trustee of two common trust funds, Common Trust Fund "A” (Equities) and Common Trust Fund "B” (Fixed Income) commenced this proceeding pursuant to Banking Law § 100-c (6) for judicial settlement of its fifth accounting of the funds. During the accounting pe
 
 *729
 
 riod, which ran from December 1, 1984 to December 31, 1993, appellant had invested approximately 4% of the common trust fund assets in four mutual funds, each a registered investment company under the Investment Company Act of 1940, as amended (see, 15 USC § 80a-1
 
 et seq.).
 
 As noted by the Appellate Division, as of December 31, 1993 "[t]he common trust funds held a total investment of $1,096,436 in mutual funds and during the accounting period its largest holding in mutual funds was approximately $2,000,000” (227 AD2d 20, 23). Mutual fund management fees during the accounting period were approximately $50,000.
 

 Respondents, guardians ad litem appointed by the Surrogate to represent the principal and income beneficiaries of the common trust funds, raised objections to the accounts on two grounds. They argued, first, that the investment of common trust fund assets in mutual funds was an improper delegation of the trustee’s management responsibility and, second, that investment in the mutual funds violated Banking Law § 100-c (3) by subjecting the common trust funds to two layers of management fees, one by the trustee and a second by the mutual funds.
 

 Both initially and again following cross motions for reargument, the Surrogate held that while the trustee did not improperly delegate its management duty by investing in mutual funds, it — and not the common trust fund — was required to absorb mutual funds management fees. On cross-appeals, all five Justices of the Appellate Division agreed that appellant could properly invest common trust fund assets in mutual funds, but divided on the second issue. A majority at the Appellate Division agreed with the Surrogate that under Banking Law § 100-c (3), appellant itself should be surcharged for the mutual fund management fees. Only the surcharge issue is before us, and on that issue we reverse.
 

 Analysis
 

 Effective July 21, 1997, the Legislature amended Banking Law § 100-c (3) to add the following:
 

 "Provided, however, that in those instances where a trust company invests common trust funds in securities of any management type investment company or investment trust pursuant to the provisions of subdivision one of this section, such trust company may charge the common trust fund for
 
 *730
 
 the fees and expenses of such securities pursuant to and consistent with the provisions of sections 11-2.2 and 11-2.3 of the estates, powers and trusts law” (L 1997, ch 250, § 2).
 
 [1]
 

 Because this language indisputably permits a trustee to pass mutual fund management fees on to the common trust fund, we must first determine if the new law is to be applied retroactively. If so, it is dispositive.
 
 [2]
 

 In determining the retroactivity issue, respondents urge us to apply the settled axiom that amendments are prospective only unless retroactive application is clearly indicated
 
 (see, e.g., People v Oliver,
 
 1 NY2d 152, 157;
 
 Jacobus v Colgate,
 
 217 NY 235, 240 [Cardozo, J.]; McKinney’s Cons Laws of NY, Book 1, Statutes § 51). Here, the Legislature did not explicitly provide for retroactivity. Appellant, however, arguing that the amendment was remedial, points to the equally settled principle that such legislation should be applied retroactively to better achieve its beneficial purpose
 
 (see, e.g., Becker v Huss Co.,
 
 43 NY2d 527, 540; McKinney’s Cons Laws of NY, Book 1, Statutes §54).
 

 As we have previously recognized, neither of these axioms should be determinative
 
 (see, Matter of Duell v Condon,
 
 84 NY2d 773, 783;
 
 see also,
 
 Frankfurter,
 
 Some Reflections on the Reading of Statutes,
 
 47 Colum L Rev 527, 544-545). Rather, "the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal”
 
 (Matter of Duell v Condon, supra,
 
 84 NY2d, at 783). Based on our analysis of statutory text and history, we conclude that the Legislature intended the amendment to Banking Law § 100-c (3) to apply retroactively.
 

 Initially, even though the amended statute does not explicitly speak to retroactivity, its language is indicative of a legislative intent that it have retroactive application.
 
 [3]
 
 The amended statute permits the trustee to pass along mutual fund fees to the
 
 *731
 
 common trust fund only "pursuant to and consistent with the provisions of sections 11-2.2 and 11-2.3 of the estates, powers and trusts law” (L 1997, ch 250, § 2). EPTL 11-2.2 (b) (1) allows trust funds to invest in mutual funds, subject to the restriction that if the mutual fund is affiliated with the trustee, the trustee may receive management fees for the trust or the mutual fund, but not both
 
 (see also,
 
 Turano, 1994 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 11-2.2, 1997 Pocket Part, at 70-71). It is effective only for investments made
 
 before
 
 January 1, 1995 (EPTL 11-2.2 [b] [1]). After that time, the statute is superseded by the similar provisions of EPTL 11-2.3 (d).
 

 If Banking Law § 100-c (3) were prospective only, there would have been no need for reference to EPTL 11-2.2 and that portion of the statute would be meaningless. We decline to read the amendment in such a way as to render some of its terms superfluous
 
 (see, Matter of Roosevelt Raceway v Monaghan,
 
 9 NY2d 293, 305-306,
 
 mot to amend remittitur denied
 
 9 NY2d 966;
 
 New York State Bridge Auth. v Moore,
 
 299 NY 410, 416).
 

 The history of the amendment also indicates a legislative intent that it be retroactive. Senator Farley, the amendment’s sponsor and chair of the Senate Banking Committee wrote both in his memorandum in support of the bill and in his letter to the Governor’s Counsel that the amendment was intended to clarify the law that trustees could pass along the costs of mutual fund management to the common trust funds
 
 (see,
 
 Sponsor’s Mem to L 1997, ch 250; Sponsor’s Letter to Honorable Michael C. Finnegan, Bill Jacket, L 1997, ch 250). Moreover, he stated on the Senate floor that "[a] controversy has recently arisen” regarding Banking Law § 100-c (3), the amendment "was intended to clarify” that statute, and the Banking Law "does not and never has” required trustees to absorb mutual fund fees. He added that it "is the legislative intent that the trustees thereof should not be subject to liability for prudent investment in mutual funds whether made in the past or the future” (Senate Debate on Senate Bill 4514-A, July 1, 1997, at 6760-6761 [statement of Senator Farley]). The remedial purpose of the amendment would be undermined if it were applied only prospectively
 
 (see, Matter of Duell v Condon, supra,
 
 84 NY2d, at 784).
 

 We thus conclude that the amendment to Banking Law § 100-c (3) should be applied retroactively. The surcharge
 
 *732
 
 imposed by the Surrogate based on his application of the statute was therefore inappropriate.
 

 Accordingly, the decrees appealed from and the order of the Appellate Division brought up for review should be reversed, without costs, and the matters remitted to Surrogate’s Court for further proceedings in accordance with this opinion.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Decrees appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . Section 1 of chapter 250 of the Laws of 1997 separately amends Banking Law § 100-c (1), expressly permitting trustees of common trust funds to invest in mutual funds.
 

 [2]
 

 . [2] New questions of law, which could not have been raised below, may be presented for the first time on appeal (see,
 
 e.g., Post v 120 E. End Ave. Corp.,
 
 62 NY2d 19, 28-29). We therefore may consider the amendment on this appeal even though it was not previously raised.
 

 [3]
 

 . We reject respondents’ argument that because the language of the statute is clear and unambiguous there is no need to look to outside sources, including the subsequent amendment, to interpret the preexisting statute. In
 
 *731
 
 our view, the preamendment statutory language was anything but clear — it did not plainly compel the result sought by either party to this proceeding.