OPINION OF THE COURT
Richard M. Platkin, J.
Petitioner Board of Education of the Lawrence Union Free School District Number 15, Town of Hempstead (BOE or District) brings this proceeding pursuant to CPLR article 78, seeking an order vacating and setting aside the determination of respondent Richard R Mills, Commissioner of Education, dated August 31, 2007, thereby allowing the transportation referendum approved by the District’s voters on May 15, 2007 to go into effect. Petitioner also seeks preliminary and permanent injunctive relief to effectuate the foregoing.
Respondent Commissioner moves to dismiss the original verified petition filed by the BOE, as well as an amended petition allegedly filed without leave of court. Petitioner cross-moves for leave to serve the amended petition. The other respondents, residents and voters of the District (local respondents), oppose the verified petition through an answer.
Background
On March 26, 2007, the BOE proposed a transportation referendum (Proposition 3) to (1) authorize the use of district funds for pre-kindergarten (pre-k) transportation, and (2) reduce distance eligibility requirements for student transportation. Specifically, with respect to pre-k transportation, Proposition 3 authorized the provision of transportation for students attending the universal pre-k program operated by the District and for private pre-k programs that fall within specified criteria.
The local respondents filed a number of objections to Proposition 3 with the Commissioner, contending that: (1) the pre-k transportation criteria contained in Proposition 3 improperly restricts pre-k transportation to eight nonpublic religious schools; (2) the BOE’s allocation of $600,000 ($465,000 for transportation to the eight nonpublic programs and $135,000 for the District’s universal pre-k program) is not sufficient for that purpose; (3) the BOE improperly linked pre-k transportation and the reduced distance eligibility in a single referendum; and (4) the Education Law does not generally authorize pre-k transportation. The local respondents (petitioners before the Commissioner) requested that the vote on the referendum be stayed and that the BOE’s decision to schedule the referendum be overturned. The Commissioner denied the request for interim *574 relief on May 4, 2007. On May 15, 2007, Proposition 3 was approved by the District’s voters.
The BOE opposed the petition before the Commissioner, arguing that: (1) it had fully examined the costs of providing the pre-k transportation, and those costs were adequately provided for in the budget; (2) Proposition 3 does not improperly link the issues of pre-k transportation and the formalization of the District’s transportation mileage policy; (3) such formalization was necessary because the issue of transportation mileage had not been voted upon in many years, and current District transportation policy differs from that which has been authorized by the voters; (4) transporting all pre-k children would be prohibitively expensive, and Proposition 3’s reasonable limits on eligibility do not impermissibly benefit any individual or group; and (5) nothing in the Education Law prohibits pre-k transportation, even if it does not affirmatively authorize it.
In a decision dated August 31, 2007, the Commissioner concluded that Education Law § 3635 (1) does not require or authorize the District to provide transportation for children attending pre-kindergarten. Further, the Commissioner determined that absent some other source of statutory or regulatory authority — such as the authorization for transportation to and from a “universal pre-k” program pursuant to Education Law § 3602-e — the authority of a union free school district to provide transportation services is limited to that set forth in Education Law § 3635. On that basis, the Commissioner ordered the BOE to refrain from using district resources to transport pre-k students attending private programs.[1] Finally, the Commissioner upheld the change in transportation mileage policy and allowed it go into effect.
The verified petition was brought in Supreme Court, Nassau County, by order to show cause dated September 5, 2007. The order included a temporary restraint staying enforcement of the Commissioner’s determination pending a hearing. By order dated September 19, 2007, the court (O’Connell, J.) granted the Commissioner’s motion to transfer venue to Albany County. The temporary restraining order was extended through September 28, 2007 in order to allow petitioner to seek further relief in Supreme Court, Albany County.
On September 27, 2007, petitioner brought on the amended petition by an order to show cause that also proposed continua *575 tion of the temporary restraining order. This court (McDonough, J.) signed the order to show cause, but declined to continue the temporary relief. Oral argument in this matter was heard on the return date of the order, November 9, 2007. This decision and order follows.
Review of Commissioner’s Determination
Under Education Law § 310, the Commissioner has been granted broad authority to review determinations made by boards of education. A decision by the Commissioner to set aside a board of education’s determination will not be overturned by the courts unless arbitrary, capricious, affected by an error of law or an abuse of discretion (Matter of Donlon v Mills, 260 AD2d 971, 972 [3d Dept 1999]). Further, courts generally must defer to the Commissioner’s construction of an ambiguous or unclear provision of the Education Law (Matter of Kelley v Ambach, 83 AD2d 733 [3d Dept 1981]; see Matter of Lezette v Board of Educ. Hudson City School Dist., 35 NY2d 272, 281 [1974] [“(in) case of doubt, or ambiguity, . . . it is a well-known rule that the practical construction that has been given to a law by those charged with the duty of enforcing it, as well as those for whose benefit it was passed, takes on almost the force of judicial interpretation”]).
The court begins its review with Education Law § 3635, which both mandates that boards of education of noncity school districts provide transportation for certain children and authorizes the provision of additional transportation services in limited circumstances. Thus, the statute requires that transportation shall be provided for all children attending grades kindergarten through 12 who live within specified distances from the school that they legally attend (§ 3635 [1] [a]). A board of education may provide transportation for students who fall outside of such distance limitations and, if provided, shall be offered equally to all children in like circumstances residing in the district (id.).
Several other provisions of Education Law § 3635 are worthy of mention. Under certain circumstances, the statute authorizes a board of education to transport a child attending grades kindergarten through eight between school and “before-and/or-after-school child care” (§ 3635 [1] [e]). The statute also provides limited authority to transport a child of less than school age who resides in the district. Such a child may receive transportation to and from the school which his or her parent legally attends, “provided that such child is accompanied by *576 such parent, that such parent is under twenty-one years of age and has not received a high school diploma, and that such transportation is furnished for the purpose of allowing the child to receive child care services and/or attend a nursery school, pre-school, or parenting program” (§ 3635 [1] [f|).
It is apparent that Education Law § 3635 neither mandates nor expressly authorizes school districts to provide transportation to pre-k students. Petitioner contends, however, that although the statute does not specifically authorize pre-k transportation, it does not prohibit it. The court disagrees with this conclusion for two primary reasons. First, the statute sets forth in prescriptive detail not only the mandatory transportation obligations of school districts, but also permissive authorizations for certain other transportation services. Petitioner’s construction of the statute as not proscribing a school district from providing transportation in circumstances not expressly prohibited by the statute would render these intricately crafted legislative authorizations superfluous, a result at odds with ordinary principles of statutory construction (see Matter of On-Bank & Trust Co., 90 NY2d 725, 731 [1997]; see also Matter of Town of Eastchester v New York State Bd. of Real Prop. Servs., 23 AD3d 484 [2d Dept 2005]).
Further, even if Education Law § 3635 were doubtful or ambiguous on this point, which it is not, the Commissioner’s long-standing construction of the statute would be entitled to significant deference. In Appeal of Neubauer (32 Ed Dept Rep 320, 321 [decision No. 12,841] [Nov. 25, 1992]), the Commissioner held that Education Law § 3635 “does not require or even authorize [a board of education] to provide transportation for children attending pre-kindergarten.” This interpretation was adhered to in Appeal of Preschool Child with Disability (43 Ed Dept Rep 343 [decision No. 15,012] [Jan. 16, 2004]), a matter in which the Commissioner upheld the District’s denial of transportation services to a child of less than school age. In that decision, the Commissioner stated as follows: “In the absence of any other statute or regulation providing for transportation, a board of education’s authority to provide transportation is restricted to the limitations set forth in Education Law § 3635” (43 Ed Dept Rep at 346).
In seeking to identify a source of statutory authority for the transportation of pre-k students other than Education Law § 3635, petitioner directs the court’s attention to Education Law § 1709, which sets forth the general powers and duties of *577 union free school districts. Petitioner argues that the powers provided to boards of education by that section — including the authority to contract for pupil transportation services (§ 1709 [27]) and the general powers necessary to discharge “duties imposed [upon boards of education] expressly or by implication” (§ 1709 [33]) — authorize the District to provide pre-k transportation to students in private programs. In this connection, petitioner argues that
“[i]t is axiomatic that under both the Federal and New York State law, early education of students is paramount (e.g., Head Start, No Child Left Behind, Universal Pre-K) and the Board has a duty pursuant to the New York State Education Law to ensure that these students are educated at an early age so they do not fall behind as they mature” (verified petition § 35).
The flaw in this argument, however, is that the general powers and duties of union free school districts set forth in Education Law § 1709 must yield to the specific statute governing the powers and duties of such districts with respect to transportation services, which is Education Law § 3635 (see Matter of Constantine v White, 166 AD2d 59, 62 [3d Dept 1991]). In any event, the Commissioner’s implicit rejection of this argument in the challenged determination would be entitled to deference for the reasons set forth, supra.
Petitioner also contends that the Commissioner’s determination to reject the voter-approved transportation referendum is arbitrary and capricious in several other respects. Specifically, petitioner argues that since the Commissioner upheld the right of the voters to cast ballots on Proposition 3 (by refusing the local respondents’ application for a stay of the election), it is arbitrary and capricious for the Commissioner to thereafter overturn the vote. Similarly, petitioner argues that it is improper to overturn a referendum validly approved by the voters in the absence of a specific statutory prohibition against the conduct approved thereby.
The court must reject both of these contentions. The voters of a district cannot authorize the board of education to take actions that are ultra vires under the Education Law (see e.g. Matter of Ross v Wilson, 308 NY 605 [1955]). Nor can a determination by the Commissioner to allow an election to go forward foreclose a later determination that activities authorized by the referendum are contrary to state law. Further, had the Commis *578 sioner stayed the referendum (over the BOE’s objection) and then later upheld the substance of the referendum, the District would have faced a substantial delay in providing pre-k transportation to its residents. Under these circumstances, the Commissioner’s actions cannot be said to be arbitrary or capricious.
In view of the foregoing, analysis of petitioner’s final cause of action, seeking preliminary and permanent injunctive relief, is rendered academic.
Leave to Amend
On September 25, 2007, the BOE filed an amended petition. The Commissioner moves to dismiss the amended petition based on petitioner’s failure to obtain leave of court. Petitioner argues that it was entitled to amend its petition as of right within 20 days of service of the verified petition {see CPLR 3025 [a]), and, in the alternative, moves for leave of court to serve the amended petition.
The amended petition raises several additional arguments in support of the causes of action alleged in the verified petition, and it also includes two new causes of action. First, petitioner alleges in the amended petition that the Commissioner’s failure to stay the referendum vote, prior to the District voters approving the two-pronged referendum, is fatal to his subsequent determination to uphold only the portion amending the transportation mileage policy.
As explained, supra, however, the Commissioner’s decision to decline to stay the referendum does not and cannot foreclose enforcement of a later determination declaring a portion of the referendum contrary to state law. Further, petitioner has not provided the court with any basis to conclude that the Commissioner’s determination to sever the impermissible portion of the referendum from the valid remainder was in any way arbitrary or capricious. Indeed, petitioner acknowledges that the other prong of the referendum — the change in transportation mileage policy — was put in place to conform the District’s transportation policies to its current practices. While petitioner may have its reasons for preferring a blank slate upon which to craft a new transportation referendum that responds to the Commissioner’s determination, it cannot be said that the Commissioner abused his broad discretion in declining to invalidate the admittedly valid portion of the referendum that put the District’s current transportation policies into compliance with state law.
Second, petitioner asserts a new cause of action alleging that the Commissioner’s construction of Education Law § 3602-e, *579 the statutory authorization for universal pre-k, is arbitrary and capricious. Specifically, the BOE argues that Education Law § 3602-e (12) (l) only permits the use of dedicated pre-k grant funds for transporting universal pre-k students, and that the Commissioner’s determination to permit the District to transport all universal pre-k students, regardless of cost, is not authorized by state law. Further, to the extent that the Commissioner relies upon Education Law § 3635 as authority for using other school district funds for such transportation, the “like circumstances” language of that statute (see § 3635 [1] [a]) compels the provision of transportation services to all pre-k students residing within the district.
The court concludes that the issues petitioner seeks to raise concerning Education Law § 3602-e fall outside the scope of the administrative determination challenged in this proceeding. The Commissioner’s determination cites Education Law § 3602-e (and its implementing regulation, 8 NYCRR 151-1.2 [a]) as authority for the provision of transportation services to universal pre-k students — a position consistent with his prior administrative decisions — and goes on to state that “[njothing in this decision shall be construed to limit [the BOE’s] authority to provide transportation for children participating in its universal pre-k program pursuant to Education Law § 3602-e.” The issue of whether a school district is limited to using universal pre-k grant funds for funding the transportation of universal pre-k students was not squarely before the Commissioner, and the court declines to adjudicate this issue without a fully developed factual record and the benefit of the Commissioner’s review in the first instance.[2]
*580 Finally, the amended petition alleges that the absence of pre-k transportation from the general transportation statute, first enacted more than 60 years ago, may be inadvertent. Petitioner contends in authorizing and encouraging school districts to establish universal pre-k programs in recent years, the Legislature simply may have neglected to update Education Law § 3635. However, given the far reaching impacts of such an amendment (and the significant legislative policy judgments inherent therein),[3] the court is skeptical of petitioner’s position. In any event, the court declines petitioner’s invitation to substitute its policy views for that of the State Legislature. The current statute currently does not require or authorize a school board to provide transportation to pre-k students. If the Legislature determines, as a matter of state policy, that such transportation should be mandated or authorized, it remains free to do so through the enactment of appropriate statutory amendments.
In view of the lack of merit of the additional allegations and causes of action set forth in the amended petition,[4] the court declines to delve into the merits of the parties’ procedural dispute regarding whether leave of court was required to serve the amended petition. If such leave is required, the court denies petitioner’s motion for leave to serve the amended petition as futile, and dismisses the amended petition as not properly served. If leave is not required, a position that may be implicit within a number of Third Department decisions citing to CPLR 3025 in connection with article 78 petitions, the amended peti *581 tion is denied on the merits and the motion for leave to amend is denied as academic.
Conclusion
Even accepting the factual allegations of the verified petition and amended petition as true, petitioner has failed to meet its burden of demonstrating that the Commissioner’s determination of August 31, 2007 was arbitrary, capricious, affected by an error of law or an abuse of discretion. Accordingly, the Commissioner’s motion to dismiss the petition must be granted, and the local respondents are entitled to judgment on the merits.
Accordingly,[5] the petition is dismissed.

. In view of this conclusion, the Commissioner declined to address the parties’ remaining contentions regarding the pre-k transportation issue.

. Insofar as the record demonstrates that the District’s pre-k grant for the current year (which was not lined out for particular categories of expenditures) exceeds its cost in transporting universal pre-k students for such year, the court questions whether there is a live controversy between the parties on this point. Further, even if petitioner were to prevail in its construction of Education Law § 3602-e, petitioner’s effort to “bootstrap” transportation for nonpublic pre-k students based on the “like circumstances” language of Education Law § 3635 (1) (a), faces an additional hurdle: that provision applies, by its terms, to the transportation of students in grades kindergarten through 12 in connection with a school district’s extension of mileage limitations beyond the statutory mínimums. Pre-k students do not fall within the scope of that provision. Moreover, in making this argument, petitioner does not address the Commissioner’s decision in Appeal of Neubauer, which held that students who attend private pre-k programs are not in like circumstances with the students attending a pre-k program operated by the school district. In this connection, the court notes that the District’s application for universal *580 pre-k funding represented that approximately two thirds of the students taking advantage of such program qualified for free or reduced price lunch, thus implicating the rationale relied upon in Appeal of Neubauer.

. If references to “kindergarten” in Education Law § 3635 were simply updated to refer to “pre-kindergarten” students, it would impose a mandate on all school districts to provide transportation to all public and private pre-k programs within specified mileage limitations. Alternatively, if the Legislature were to enact a special provision simply authorizing districts, at their option, to provide such transportation, the amendment would likely include safeguards to ensure equal treatment among similarly situated pre-k students, comparable to the “like circumstances” language of the first subdivision of the statute. This court has no basis for preferring one approach over the other, but the State Legislature, Board of Regents, school boards, private schools and other stakeholders presumably would have policy views on the subject.

. Petitioner also directs the court’s attention to Education Law § 1712 (1), which authorizes the District to fix the age of children entering kindergarten, but the court finds that this provision is irrelevant to the disposition of the issues at hand.

. The court has considered petitioner’s remaining arguments and contentions and finds them to be without merit.