OPINION OF THE COURT
Kimberly A. O’Connor, J.
Petitioners Frank Nuara, as acting chairman of Metropolitan New York College and University Workers’ Compensation Group, and David Pastore, as chairman of Building Exterior Services Trust of New York, commenced the instant CPLR article 78 proceeding, challenging the authority of respondent New York State Workers’ Compensation Board and respondent Zachary S. Weiss, chairman of the Board, to levy certain monetary assessments against them pursuant to the Workers’ Compensation Law. Respondents oppose the petition. Oral argument was held in connection with this proceeding on August 20, *427 2008, and post hearing submissions were received. The papers are fully submitted, and all issues have been briefed.
Petitioners comprise two terminated group self-insured trusts (GSIT) that formerly provided workers’ compensation insurance coverage for employer-members in their respective fields and industries. In December 1999 and May 2003, petitioners voluntarily terminated their status as GSITs. However, they continued to administer the workers’ compensation liabilities incurred by their employer-members, which accrued during membership in the GSITs and prior to the GSITs’ termination. Petitioners are presently administering 19 workers’ compensation claims of injured employees of their former employer-members. To secure their obligation to pay these remaining claims, petitioners collected and set aside reserve funds, pledged cash, surety bonds, and letters of credit to respondent Board, and purchased excess insurance coverage for claims that exceed a threshold amount.
Respondent Board is charged, inter alia, with administering the provisions of the Workers’ Compensation Law and its attendant rules and regulations pertaining to workers’ compensation benefits. The Workers’ Compensation Law authorizes the Board to levy monetary assessments against GSITs, including an assessment to finance the special disability fund (see Workers’ Compensation Law § 15 [8]) and the fund for reopened cases (see Workers’ Compensation Law § 25-a), and an assessment to cover the costs and expenses associated with administering the Workers’ Compensation Law (see Workers’ Compensation Law § 151) and the self-insurance program (see Workers’ Compensation Law § 50 [5]). The Workers’ Compensation Law also confers upon the Board the authority to assess all private self-insured employers, both individual self-insurers and GSITs, for the anticipated losses, liabilities, and expenses of defaulted GSITs (see Workers’ Compensation Law § 50 [5] [f]).[1]*[2]
*428 Assessments levied by the Board against individual self-insurers and GSITs, pursuant to Workers’ Compensation Law §§ 15 (8); 25-a, 50 (5) and 151, are determined using a “pure premium calculation” and allocated based upon a statutory formula (see Workers’ Compensation Law §§ 15 [8] [h] [4]; 50 [5] [c]; 151 [2] [b]).* *[3] The “pure premium calculation” is defined in the Workers’ Compensation Law as:
“the New York state annual payroll as of December thirty-first of the preceding year by class code for each employer member of a group self-insurer multiplied by the applicable loss cost for each class code as determined by the workers’ compensation rating board in effect on December thirty-first of the preceding year” (Workers’ Compensation Law §§ 15 [8] [h] [4]; 151 [2] [b]; see Workers’ Compensation Law § 50 [5] [c]).
The “pure premium calculation” is the result of 2007 amendments to the Workers’ Compensation Law, which took effect on *429 January 1, 2008, and changed the assessment methodology for self-insurers, both individual self-insurers and GSITs (L 2007, ch 6, §§ 56, 65). Prior to the 2007 amendments, assessments imposed against individual self-insurers and GSITs were calculated based upon either indemnity (Workers’ Compensation Law §§ 15 [8] [h] [4]; 25-a, 151 [2] [b]) or a security deposit (Workers’ Compensation Law § 50 [5] [c]).
On February 11, 2008, March 10, 2008, April 10, 2008, and May 12, 2008, respondents sent petitioners notices of assessment, demanding the first and second quarterly installments of the section 151 assessments and the section 50 (5) assessments, comprising both the section 50 (5) (c) assessment and the section 50 (5) (f) assessment, and the section 15 (8) and section 25-a annual assessments (2008 administrative assessments). Petitioners paid these assessments. This proceeding followed.
Shortly after this proceeding was commenced, new legislation was enacted amending the Workers’ Compensation Law (see L 2008, ch 139). This new legislation, which was signed into law by the Governor on June 30, 2008, includes amendments to provisions of the Workers’ Compensation Law that are at issue in this proceeding (see L 2008, ch 139, §§ 3, 7, 15). Specifically, section 3 of the new legislation amends Workers’ Compensation Law § 50 (5) (c), adding a new clause (3), which reads:
“Pure premium for assessments made prior to January first, two thousand nine against individual and group self-insurers who ceased to self-insure shall be based on payroll at the time the individual or group self-insurer has ceased to self-insure, reduced by a factor reflecting the reduction in the group or individual self-insurer’s self-insurance liabilities since ceasing to self-insure.”
Section 7 amends the “pure premium calculation” set forth in Workers’ Compensation Law § 15 (8) (h) (4) “for a group or individual self-insurer who has ceased to self-insure” and provides that the “pure premium calculation” for these self-insurers “shall be based on payroll at the time the group or individual self-insurer ceased to self-insure reduced by a factor reflecting the reduction in the group or individual self-insurer’s self-insurance liabilities since ceasing to self-insure.” Section 15 amends Workers’ Compensation Law § 151 (2) (b) and provides that
“[p]ure premium for assessments against individual and group self-insurers who ceased to self-insure shall be based on payroll at the time the individual *430 or group self-insurer has ceased to self-insure, reduced by a factor reflecting the reduction in the group or individual self-insurer’s self-insurance liabilities since ceasing to self-insure.”
Respondents argue that the new legislation is remedial in nature and was intended to clarify the executive’s and the legislature’s intent that “inactive”[4] group self-insurers continue to be subject to assessments, and further that Workers’ Compensation Law § 50 (5) (f) applies to GSITs, including those which have ceased to self-insure. Thus, respondents submit that the court should apply the amended legislation retroactively in determining whether the Board has correctly interpreted the words “the preceding year” in calculating the 2008 administrative assessments levied against petitioners and the applicability of Workers’ Compensation Law § 50 (5) (f) to GSITs, including “inactive” GSITs. Petitioners maintain that retroactive application of the amended legislation is inappropriate in this case because the legislature did not expressly state that it would apply retroactively, and because the new legislation imposes liabilities rather than benefits upon petitioners.
The Court of Appeals has recognized two axioms of statutory interpretation in determining whether a statute should be given retroactive effect (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). The first is that “[a]mendments are presumed to have prospective application unless the Legislature’s preference for retroactivity is explicitly stated or clearly indicated” (Matter of Gleason [Michael Vee, Ltd.], 96 NY2d at 122). The second is that “remedial legislation or statutes dealing with procedural matters” (Becker v Huss Co., 43 NY2d 527, 540 [1978]) “should be applied retroactively to better achieve [their] beneficial purpose[s]” (Matter of OnBank & Trust Co., 90 NY2d 725, 730 [1997]). Notably, however, neither of these axioms are determinative (see Matter of OnBank & Trust Co., 90 NY2d at 730). Rather, they “are merely navigational tools to discern legislative intent” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]), and “should not be abused as talismanic” (Becker v Huss Co., 43 NY2d at 540; Mat *431 ter of Mills v Staffking [Hidden Val.], 271 AD2d 146, 148 [3d Dept 2000]).
Indeed, the key in determining the temporal reach of a statute lies in ascertaining the intent of the legislature (see Brothers v Florence, 95 NY2d 290, 298-299 [2000]). Since “the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof” (Matter of Price Chopper Operating Co., Inc. v New York State Liq. Auth., 52 AD3d 924, 925-926 [3d Dept 2008], citing Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 583; see Matter of Kern v New York State Dept. of Civ. Serv., 288 AD2d 674, 676 [3d Dept 2001]). However, “where a statute does not expressly address the issue [of retroactivity,] the reach of the statute ultimately becomes a matter of judgment made upon review of the legislative goal” (Brothers v Florence, 95 NY2d at 299 [internal quotation marks and citations omitted]), and factors such as “whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be” may be considered, where applicable (Matter of Gleason [Michael Vee, Ltd.] at 122; see also Brothers v Florence at 299; Matter of OnBank & Trust Co. at 730).
Applying these principles and upon review and analysis of the statutory text and legislative history of the new legislation, the court finds that the legislature intended the amendments to the Workers’ Compensation Law at issue in this proceeding to apply prospectively. Initially, the court notes that the legislature did not expressly state that the subject amendments were to have retroactive effect. Rather, it stated that those provisions “shall take effect immediately” (L 2008, ch 139, § 16). “While the fact that a statute is to take effect immediately ‘evinces a sense of urgency,’ ‘the meaning of the phrase is equivocal’ in an analysis of retroactivity” and “[identical language in other [statutes] has not been enough to require application to pending litigation” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 583, citing Becker v Huss Co., 43 NY2d at 541; see Matter of Mills v Staffking [Hidden Val.], 271 AD2d at 148).
Furthermore, “the significance of the effective date upon [the court’s] analysis of the reach of the subject provisions is further obscured because the Legislature explicitly designated prospec *432 tive . . . application for other provisions of the [amended legislation] not at issue here” (Majewski v Broadalbin-Perth Cent. School Dist. at 583; see L 2008, ch 139, § 16). Additionally, while section 3 of the new legislation, which amends Workers’ Compensation Law § 50 (5) (c), contains language regarding the pure premium calculation applicable to GSITs that have ceased to self-insure which could be characterized as retroactive, that provision has an immediate effective date, and the trigger date for the application of such provision is six months after the effective date of the new law. This language coupled with the immediate effective date does not, in this court’s opinion, evince a sense of urgency that would support retroactive application of the legislation.
Moreover, “[i]n an analysis of retroactive application,” the Court of Appeals has “found it relevant when the legislative history reveals that the purpose of new legislation is to clarify what the law was always meant to say and do” (Brothers v Florence at 299 [emphasis omitted], quoting Majewski v Broadalbin-Perth Cent. School Dist. at 585; Matter of OnBank & Trust Co. at 731). “However, labeling the legislation as ‘remedial’ ... is not dispositive in light of other indicators of legislative intent” (Majewski v Broadalbin-Perth Cent. School Dist. at 585). Here, both the sponsor’s memorandum and the Governor’s program bill memorandum in support of the new legislation state, inter alia, that section 3 of the legislation “adds language to clarify the Executive’s and Legislature’s intent that individual and group self-insurers that have ceased to self-insure are subject to the assessments provided in WCL § 50” and further that sections 7 and 15 of the legislation are intended “to clarify the assessment methodology . . . for employers who have ceased to self-insure” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 139 at 8, 9).[5] 6 In addition, the bill jacket includes a post-passage opinion from the Board addressed to the reach of the new statute. While these statements and this opinion may be considered in an analysis of legislative history and statutory purpose and accorded some weight in that regard, such statements and opinion do not establish that the new legislation is remedial in this case.
First, the only aspect of the new legislation which could be classified as clarifying “what the law was always meant to say and do” (Majewski v Broadalbin-Perth Cent. School Dist. at *433 585) lies in the applicability of Workers’ Compensation Law § 50 (5) to both individual and group self-insurers, including GSITs that have ceased to self-insure, with regard to liability for the anticipated losses, liabilities, and expenses of defaulted GSITs (see L 2008, ch 139, § 3). In Held v Workers’ Compensation Bd. (Sup Ct, Albany County, July 7, 2008, index No. 2957-OS), this court found that the plain language of Workers’ Compensation Law § 50 expressly confers upon the Board the authority to assess all private self-insurers, including GSITs, for the anticipated losses, liabilities, and expenses of defaulted GSITs (see Workers’ Compensation Law § 50 [former (5) (f)]).[6] In addition, administrative assessments levied pursuant to Workers’ Compensation Law § 50, including section 50 (5) (c) and (f) assessments, “shall be assessed against all self-insurers including for this purpose employers who have ceased to exercise the privilege of self-insurance” (see Workers’ Compensation Law § 50 [5] [c] [2]). Since section 50 (5) (f) assessments were expressly authorized by statute prior to the 2008 amendments to the Workers’ Compensation Law, the new legislation is a clarifying statute in this regard only.
Second, the claim that the new legislation serves to “clarify the assessment methodology . . . for employers who have ceased to self-insure” and is, thus, remedial in this regard, is wholly without merit and is rejected. A plain reading of the new legislation reveals that the “pure premium calculation” as defined in the Workers’ Compensation Law prior to the 2008 amendments and as applied to individual and group self-insurers, including those which have ceased to self-insure, was not simply clarified, but was substantively changed to an entirely new calculation. There is nothing in the amendment to the pure premium calculation for self-insurers which have ceased to self-insure that is addressed to an aspect or nuance of the prior law that was unclear or ambiguous. Further, the memoranda in support of the legislation and statements and opinions in the bill jacket *434 offer no guidance as to the legislature’s intent regarding the assessment methodology.
The Board’s opinion that the new legislation should be retroactively applied is accorded little weight in light of the fact that the amendments include a significant and substantive change to the prior law with respect to the pure premium calculation for self-insurers that have ceased to self-insure, and the fact that the legislature expressly designated prospective application of the other provisions of the new legislation not at issue in this proceeding. Furthermore, while the Board opines that active and “inactive” self-insurers have always been subject to Workers’ Compensation Law §§ 15 (8); 25-a, 50 (5) and 151 assessments and maintains that the new legislation clarifies what the executive and legislature “currently believe the state of the WCL requires and what they had always intended it to require,” there is nothing in the Board’s opinion that discloses an intention on the part of the legislature that the new pure premium calculation for self-insurers that have ceased to self-insure be applied to assessments levied prior to the effective date of the provisions of the legislation related to such calculation.[7]
Finally, although one of the purposes behind the 2008 amendments to the Workers’ Compensation Law was to address “the controversy that has recently arisen” (Senate Introducer Mem in Support, Bill Jacket, L 2008, ch 139 at 8) with respect to the assessments levied against GSITs for the anticipated losses, liabilities, and expenses of defaulted GSITs, the provisions of the statute at issue here were not, in this court’s opinion, designed to rewrite an unintended judicial interpretation. Nor do such provisions reaffirm a legislative judgment about what the law in question should be.
Based upon the principles of statutory construction and interpretation and a review of the statutory language and legislative history, the court finds “nothing that approaches any type of ‘clear’ expression of legislative intent concerning retroactive ap *435 plication” of sections 3, 7 and 15 of the new legislation to overcome the strong presumption of prospectivity (Majewski v Broadalbin-Perth Cent. School Dist. at 589). Therefore, the court concludes that the legislature intended those provisions of the new legislation to apply to assessments levied after its effective date and not before. As such, the court declines to apply the amended legislation retroactively in determining the issues presented herein.
Turning to the merits of the petition, petitioners argue that: (1) the Workers’ Compensation Law prohibits any administrative assessments against them as terminated GSITs; (2) they are not liable for the workers’ compensation obligations owed by other GSITs and individually self-insured employers; (3) the Board’s assessments under Workers’ Compensation Law § 50 (5) violate their rights to due process; and (4) the Board’s 2008 assessments violate the Contracts Clause of the United States Constitution.
Specifically, petitioners contend that the 2008 administrative assessments imposed against them pursuant to Workers’ Compensation Law §§ 15 (8); 25-a, 50 (5) and 151 are unlawful and should be annulled because the Board “deviated from the statutory definition of pure premium” and based these assessments upon an incorrect calculation of petitioners’ pure premiums and an application of a “secret actuarial formula.” According to petitioners, “pure premium is the product of two numbers, one of which is ‘the New York State annual payroll as of December thirty-first of the preceding year by class code for each employer member’ of a GSIT.” Petitioners maintain that as of December 31, 2006 and December 31, 2007, they had no members, and no payroll and, thus, their pure premiums in 2007 and 2008 must equal zero. Petitioners allege that the Board has made “unilateral changes” to the pure premium calculation without statutory authority and failed to promulgate any rules or regulations authorizing respondents to use any allocation formula other than the statutory formula to calculate petitioners’ 2008 administrative assessments.
Petitioners further argue that as terminated GSITs, they are not responsible for the workers’ compensation obligations owed by other GSITs and individually self-insured employers and, thus, are not subject to Workers’ Compensation Law § 50 (5) (f) assessments. Petitioners assert that they are not “employers” within the meaning of the Workers’ Compensation Law, that the legislative history of Workers’ Compensation Law § 50 (5) *436 (f) confirms that it was never intended to apply to GSITs, and that respondents have failed to promulgate any rules or regulations authorizing respondents to assess petitioners for the estimated, anticipated losses, liabilities, and/or expenses of defaulted GSITs and informing petitioners of their potential liability for obligations owed by other defaulted GSITs. Petitioners aver that even if the Board had the authority to levy section 50 (5) (f) assessments against terminated GSITs, the Board did not meet the statutory prerequisites of section 50 (5) (f) before imposing the assessments.
Finally, petitioners claim that the Workers’ Compensation Law § 50 (5) (f) assessments violate their constitutional due process rights and constitute a taking of property without just compensation within the meaning of the Takings Clause, further abridging their due process rights, because Workers’ Compensation Law § 50 on its face and as applied lacks the requisite clarity to apprise them of their potential for liability for the obligations of other GSITs, and the section 50 (5) (f) assessments compromise their ability to pay the remaining claims of injured employees of their own former employer-members, will not cover any of the Board’s administrative expenses of petitioners, and will solely benefit defaulted GSITs. Petitioners also claim that the 2008 assessments violate their rights under the Contracts Clause of the United States Constitution because the assessments severely impair their obligations under their respective trust agreements, i.e., their ability to satisfy the claims of their own former employer-members, and would entail an unreasonable, inappropriate means of paying the workers’ compensation claims for injured employees of the members of defaulted GSITs.
An agency’s interpretation of the statutes that it is charged with administering will be upheld if the question before the court involves the agency’s special competence or expertise, and there has been no showing that the agency’s interpretation is irrational or unreasonable (see Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003]; Seittelman v Sabol, 91 NY2d 618, 625 [1998]; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; Matter of Howard v Wyman, 28 NY2d 434, 438 [1971]). Where, as here, “the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the . . . agency” (Lorillard Tobacco Co. v Roth, 99 NY2d at 322 [internal quotation marks and citations *437 omitted]; see Matter of Price Chopper Operating Co., Inc. v New York State Liq. Auth., 52 AD3d at 925; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d at 459). Furthermore, if the agency’s interpretation of a statute “runs counter to the clear wording of a statutory provision, it should not be accorded any weight” (Kurcsics v Merchants Mut. Ins. Co. at 459).
“The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature” (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]). The best evidence of the legislature’s intent are the words of the statute (see id.; Matter of Theroux v Reilly, 1 NY3d 232, 239 [2003]). Thus, “where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Matter of Wise v Jennings, 290 AD2d 702, 703 [3d Dept 2002], quoting Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976] [internal quotation marks and citations omitted]).
Preliminarily, the court finds that the language of Workers’ Compensation Law §§ 15 (8); 25-a, 50 (5) and 151 expressly authorizes the Board to impose assessments upon GSITs that have ceased to self-insure. Workers’ Compensation Law § 15 (8) (h) (4) provides that
“[a]n employer who has ceased to be a self-insurer or a group that ceases to be licensed as a group self-insurer shall continue to be liable for any assessments into [the special disability] fund on account of any compensation payments made by him or her on his or her account during such fiscal year.”
Section 15 (8) (h) (4) defines the term “self-insurer” to “include any employer or group of employers permitted to pay compensation directly under the provisions of subdivision three, three-a or four of [Workers’ Compensation Law] section fifty.” Since petitioners continue to pay workers’ compensation directly to injured employees on behalf of their former employer members, they are “self-insurers” within the meaning of Workers’ Compensation Law § 15 (8) (h) (4) and continue to be liable for assessments under that provision.[8]
Furthermore, Workers’ Compensation Law § 151 (2) (b) authorizes the Board’s chairman to assess and collect a propor *438 tion of the general expenses of administering the Workers’ Compensation Law “from each insurance carrier, the state insurance fund and each self-insurer including group self-insurers.” Like Workers’ Compensation Law § 15 (8) (h) (4), the term “self-insurer” includes, for purposes of section 151 (2) (b) assessments, “any employer or group of employers permitted to pay compensation directly under the provisions of subdivision three, three-a or four of [Workers’ Compensation Law] section fifty.” Moreover, in the event that the fund for reopened cases “shall fall below the prescribed minimum,” Workers’ Compensation Law § 25-a (3) permits the chairman to levy an assessment against “all insurance carriers, in the respective proportions established in the prior fiscal year under the provisions of section [151]” in “an amount sufficient to restore the fund to the prescribed minimum.” Workers’ Compensation Law § 2 (12) defines “ ‘insurance carrier’ [to] include . . . employers permitted to pay compensation directly under the provisions of subdivisions three, three-a or four of [Workers’ Compensation Law] section fifty.”
Because petitioners are “employers permitted to pay compensation directly” to the injured employees of their former employer members, they are “self-insurers” within the definition of Workers’ Compensation Law § 151 (2) (b) and “insurance carriers” within the definition of Workers’ Compensation Law § 2 (12) and are, therefore, subject to sections 151 and 25-a assessments.
Finally, the court finds that GSITs are “employers” within the meaning of Workers’ Compensation Law § 50 (5) and are, therefore, subject to section 50 (5) (c) and (f) assessments. Pur *439 suant to Workers’ Compensation Law § 50 (3-a) (1), the provision of the self-insurance statute that deals with group self-insurance, the term “employers” is defined to include:
“(a) employers with related activity in a given industry which shall include municipal corporations as that term is defined in sections two and six-n of the general municipal law, employing persons who perform work in connection with the given industry, (b) an incorporated or unincorporated association or associations consisting exclusively of such employers provided they employ persons who perform such related work in the given industry, and (c) a combination of employers as described in subparagraph (a) . . . and an association or associations of employers as described in subparagraph (b).”
The court finds that this broad language brings GSITs within the statutory definition of “employers” as used in the Workers’ Compensation Law, and specifically in Workers’ Compensation Law § 50 (5). Furthermore, as discussed supra, assessments levied pursuant to Workers’ Compensation Law § 50 (5) (c) (2), including 50 (5) (f) assessments, “shall be assessed against all self-insurers including for this purpose employers who have ceased to exercise the privilege of self-insurance.” Moreover, this court found in the Held case that the language of Workers’ Compensation Law § 50 (5) (f) expressly confers upon the Board the authority to assess all private self-insured employers, including GSITs, for the anticipated losses, liabilities, and expenses of defaulted GSITs “in accordance with paragraphs c and d” of section 50 (5).[9]
For the reasons that follow, however, the court finds that the Board’s interpretation of “the preceding year” with respect to its pure premium calculation for GSITs that have ceased to self-insure is contrary to the clear language of the Workers’ Compensation Law and is, thus, unreasonable. Pure premium is the product of the annual payroll from each self-insurer multiplied by the applicable class code rate promulgated by the New York State Compensation Insurance Rating Board. According to the text of the statute, the payroll figure in the pure premium calculation is determined by the Board as of December 31st of “the preceding year” (Workers’ Compensation Law § 15 [8] [h] [4]; 151 [2] [b]; see Workers’ Compensation Law § 50 [5] [c]).
*440 Respondents concede, and the record discloses, that the Board interpreted “the preceding year” for terminated GSITs “to be the payroll reported for the last year in which the GSIT[s] provided coverage to [their] employer members, i.e., the last active year” of self-insurance. In support of its interpretation, respondents argue that inactive GSITs which are still directly making compensation payments to injured employees continue to contribute to the administrative expenses of the Board in general and the Office of Self-Insurance in particular, as these GSITs continue to file reports, administer claims, and otherwise comply with the requirements of the Workers’ Compensation Law. Respondents further argue that these terminated GSITs “are able to seek monetary relief provided for by the special disability fund and the fund for reopened cases.” Respondents contend that if GSITs, which have ceased to self-insure but continue to make compensation payments directly to injured workers, were no longer subject to assessments, they “would have every incentive to become inactive any time it became convenient for them to do so in order to avoid future assessments” and could impose “ever greater assessment obligations on fewer and fewer active GSITs.” Such arguments, however, do not save the assessments in this proceeding.
The court finds the language “the preceding year” as used in the definition of the “pure premium calculation” in Workers’ Compensation Law §§ 15 (8); 50 (5) and 151 to be clear and unambiguous. As such, the court will construe this language so as to give effect to the plain meaning of the words used. Applying the principles of statutory construction and interpretation and upon a plain reading of the language of the statute, the court further finds that there is nothing in the text which suggests that the words “the preceding year” could reasonably be interpreted to mean, for terminated GSITs, the payroll reported for the last year such GSITs provided coverage to their employer members, i.e., the last active year of self-insurance.
The word “preceding” is defined in the dictionary as “[ejxisting or coming before in time, place, rank, or sequence” (see Webster’s II New College Dictionary 889 [3d ed 2005]). The legislature’s use of the word “preceding” in the phrase “the preceding year” is consistent with its plain meaning and the dictionary definition. If the legislature intended “the preceding year” to be the last active year of self-insurance for terminated GSITs, the legislature could have written the statute to say so (see Matter of Theroux v Reilly, 1 NY3d at 240; see Matter of *441 Sweeney v Dennison, 52 AD3d 882, 883-884 [3d Dept 2008]; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 74 [“the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended”]).[10]
Furthermore, “a statute’s plain meaning must be discerned without resort to forced or unnatural interpretations” (Matter of Theroux v Reilly at 240 [internal quotation marks and citations omitted]). Here, while this court’s plain reading of the language of the statute is not consistent with the Board’s interpretation of “the preceding year” and may not comport with the overall intent of the Workers’ Compensation Law that GSITs which have ceased to self-insure and continue to make compensation payments directly to injured workers be subject to assessments, the legislature chose the words “the preceding year” in its definition of the pure premium calculation and not the last year terminated GSITs provided coverage to their employer-members, i.e., the last active year of self-insurance. Any reading of these words to comport with the Board’s interpretation of “the preceding year” would be inconsistent with the clear language of the statute.
Under these circumstances, the court finds that the challenged assessments were based upon an unreasonable interpretation of the words “the preceding year,” which was used in calculating petitioners’ pure premiums and subsequently allocating the 2008 administrative assessments levied against them pursuant to Workers’ Compensation Law §§ 15 (8); 25-a, 50 (5) and 151. As such, these assessments must be annulled and vacated.
All remaining contentions raised by the parties in this proceeding need not be reached in light of the foregoing determination.
Accordingly, it is hereby ordered and adjudged, that the petition is granted to the extent that the 2008 first and second quarterly installments of the Workers’ Compensation Law § 151 assessments and the Workers’ Compensation Law § 50 (5) assessments, comprising both the section 50 (5) (c) assessment and the section 50 (5) (f) assessment, and the Workers’ *442 Compensation Law § 15 (8) and Workers’ Compensation Law § 25-a annual assessments are annulled and vacated; and it is further ordered and adjudged, that the Workers’ Compensation Board shall take action consistent with this decision/order/ judgment.

. The court notes that the version of Workers’ Compensation Law § 50 (5) that was in effect at the time of the challenged assessments and when this proceeding was commenced included two subparagraphs (f). The second subparagraph (f) of Workers’ Compensation Law § 50 (5), the provision at issue in this proceeding, was amended in 2008 and renumbered subparagraph (g). Since Workers’ Compensation Law § 50 (5), second subparagraph (f) is the provision that was in effect when the challenged assessments were imposed and when petitioners commenced this proceeding, all references herein are to Workers’ Compensation Law § 50 (5) second subparagraph (f).

. In Held v Workers’ Compensation Bd. (Sup Ct, Albany County, July 7, 2008, index No. 2957-08), this court found that, upon a plain reading of Work *428 ers’ Compensation Law § 50 (5) (f), considered in light of the relevant legislative history, attendant regulations and the provisions of section 50 as a whole, the legislature’s use of the term “private self-insured employer” evidenced its intent that such provision apply to all nonpublic self-insurers, including individual self-insured employers and GSITs. In that case, this court addressed the use of the terms “private” and “employer” in the context of the self-insurance program and more specifically in Workers’ Compensation Law § 50, and found that those terms referred to both individual self-insurers and GSITs. The court also addressed the term “private” finding that such term, as used in Workers’ Compensation Law § 50, was meant to distinguish nonpublic individual employers self-insuring under the provisions of section 50 (3) and nonpublic employer groups self-insuring under the provisions of section 50 (3-a), from public employers self-insuring individually pursuant to the provisions of section 50 (4) or as a group exclusively made up of public employers pursuant to the provisions of section 50 (3-a). The court determined that the term “private self-insured employer,” as contemplated by the legislature, included nonpublic individual self-insured employers and GSITs, comprising nonpublic employers only as well as GSITs that include both public and nonpublic employers. The court found that such “private self-insured employers” are subject to Workers’ Compensation Law § 50 (5) (f) assessments.

. Pursuant to sections 15 (8) (h) (4); 25-a and 151 (2) (b) of the Workers’ Compensation Law, a GSIT’s assessment “shall be a sum equal to that proportion of the amount which the pure premium calculation for each such group self-insurer bore to the total pure premium calculation for all group self-insurers for the calendar year which ended within the preceding state fiscal year.” The basis of apportionment of the Workers’ Compensation Law § 50 (5) (c) and (f) assessments against each GSIT is “a sum equal to that proportion of the amount which the pure premium calculation for each [GSIT] bore to the total pure premium calculation for all group self-insurers for the calendar year which ended within the preceding state fiscal year.” (Workers’ Compensation Law § 15 [8] [h] [4].)

. The court notes that respondent Board has taken the position that petitioners are not “terminated” GSITs since they continue to directly pay workers’ compensation claims that arose prior to the date that they ceased providing workers’ compensation coverage to their employer-members. The Board submits that the term “inactive” is a more accurate description of the petitioners’ status.

. The sponsor’s memorandum and the Governor’s memorandum incorrectly refer to subdivisions (7) and (15) of the new legislation as (8) and (16).

. Workers’ Compensation Law § 50 (former [5] [f]) provided, in relevant part, as follows:
“Whenever the chairman shall determine that the compensation and benefits provided by this chapter may be unpaid by reason of the default of an insolvent private self-insured employer and the penal sum of the surety bond and[/]or the securities or irrevocable letters of credit or cash held on its behalf by the chairman are about to become exhausted, the chairman shall levy an assessment against all private self-insured employers in accordance with paragraphs c and e of this subdivision to assure prompt payment of such compensation and benefits” (emphasis added).

. Significantly, as noted above, the pure premium calculation was the result of 2007 amendments to the Workers’ Compensation Law, which changed the assessment methodology from indemnity (Workers’ Compensation Law §§ 15 [8] [h] [4]; 25-a, 151 [2] [b]) or a security deposit (Workers’ Compensation Law § 50 [5] [c]) to pure premium. Also significant is the fact that the assessment methodology for Workers’ Compensation Law § 50 (5) assessments imposed against active self-insurers was substantively changed in the 2008 amendments from the pure premium calculation and reverted back to indemnity payments.

. Petitioners’ assertion that section 15 (8) (h) (4) authorizes assessments against terminated GSITs based upon compensation payments and not upon *438 pure premium is without merit. While allocation of section 15 (8) (h) (4) assessments for group self-insurers is “based upon the proportion that the total compensation payments made by all group self-insurers bore to the total compensation payments made by all self-insurers, the state insurance fund and all insurance carriers during the fiscal year which ended within [the] preceding calendar year,” the portion of this assessment “collected from each group self-insurer,” including those which have ceased to self-insure “shall be a sum equal to that proportion of the amount which the pure premium calculation for each such group self-insurer bore to the total pure premium calculation for all group self-insurers for the calendar year which ended within the preceding state fiscal year.” As such, the language “shall continue to be liable for any assessments into said fund on account of any compensation payments made by him or her” does not establish an assessment methodology for levying section 15 (8) assessments against terminated GSITs. Rather, this language establishes when a GSIT that ceases to self-insure will no longer be liable for section 15 (8) assessments, that is when a terminated GSIT is no longer paying compensation payments directly to injured employees.

. In their reply brief, petitioners acknowledged the ruling by the court in the Held matter, and did not further address those arguments.

. Significantly and of particular note is the fact that the 2008 amendments to the Workers’ Compensation Law, which the court declined to apply retroactively in this case, include an amendment to the pure premium calculation for terminated GSITs that comports with the Board’s interpretation of “the preceding year” in this case.